## W. F. SHARP v. JIM KENNEDY, et al.

Eastern Section. April 12, 1930.

Petition for Certiorari denied by Supreme Court, October 7, 1930.

J. C. Wilburn and Lee, Price, McDermott & Meek, all of Knoxville, for appellant.

C. E. Waggoner, of Loudon, and Gamble, Crawford & Goddard, of Maryville, for appellee.

THOMPSON, J. The complainant, Dr. Sharp, filed this bill against J. A. Henry and others to enjoin the levy of an execution issued on a $5,000 judgment of the Circuit Court which had been rendered in favor of said Henry and others against Sharp. The ground of the bill was that the judgment had been obtained through fraud. An injunction, as prayed, was issued, but later the Chancellor dissolved the injunction, dismissed complainant's bill, rendered judgment in favor of Henry and others against complainant and the sureties on the injunction bond for the judgment and interest and costs of the law case (including costs of the Circuit Court, Court of Appeals and Supreme Court) and rendered judgment against complainant and the sureties on his cost bond for the costs of the present cause. The complainant has appealed to this Court and has assigned errors.

On May 5, 1927, J. A. Henry, his wife, Mary A. Henry, and their eight children lived on the northwest side of the Niles Ferry Road. Their mail box was on the southeast side of said road. On said date the United States rural mail carrier drove his car to said mail box and blew his horn to indicate to the Henrys that he had a package for them which was too large to be put in their mail box. Mrs. Henry crossed the road to the mail carrier's car and received the package. As she was re-crossing the road on her return trip home, she was struck by Dr. Sharp's car which he was operating along said road. She died within a few hours from the injuries thus sustained.

J. A. Henry, for his own use and benefit, and for the use and benefit of his said eight children, instituted a suit in the Circuit Court against Dr. Sharp to recover damages for the unlawful killing of his deceased wife. The jury rendered a verdict in his favor for $5,000, and costs. Final judgment was rendered on this verdict and Dr. Sharp appealed to this Court (Court of Appeals) where the judgment of the Circuit Court was affirmed. Dr. Sharp then filed a petition for certiorari but the same was denied by the Supreme Court. Thereafter an execution was issued and went into the hands of Jim Kennedy, Sheriff of Monroe County, who was about to levy it on the property of Dr. Sharp when he filed the bill in this cause against said Kennedy, J. A. Henry, the eight children, C. E. Wagoner, E. E. Watkins and M. H. Gamble, the last three of whom were attorneys of record for J. A. Henry and in whose favor a lien had been declared on said $5,000 recovery.

It was alleged in the bill that the principal allegation of negligence contained in the declaration in the law cause was that Dr. Sharp was running at a speed of 45 or 50 miles per hour; that since the affirmance of said judgment in the law cause by the appellate court, complainant, Dr. Sharp, had for the first time been able to

learn facts showing that fraud had been perpetrated upon him by the said J. A. Henry and his children in the obtaining of said judgment; that in the trial of said law cause the one material witness upon the vital issue of the speed of Dr. Sharp was said J. A. Henry who swore positively at said trial that Dr. Sharp was driving his car at a speed of forty to forty-five miles per hour and that in this false and fraudulent testimony he was supported by certain members of his family who joined with him in a deliberate conspiracy to falsify the facts and to impose liability upon complainant, Dr. Sharp, upon the alleged ground that complainant was driving his car at an unlawful rate of speed at the time and place of said accident.

The bill further alleged that after the said J. A. Henry and his children thought that said judgment had become final by its affirmance in the appellate courts they began to talk to friends and neighbors and to admit the falsity of their said testimony; that said J. A. Henry had expressly admitted that he falsified the true facts on the witness stand and that complainant was driving his car at only 10 or 15 miles per hour, and had boasted that notwithstanding said fact he had been able to obtain a judgment against complainant for $5,000. It was further alleged that said Henry and his children knew that complainant was not operating his car at an unlawful rate of speed; that they joined in a deliberate fraudulent conspiracy among themselves to offer perjured testimony upon this vital material issue which was the determinative factor therein, and as a direct and necessary result of said fraudulent testimony they had obtained said judgment; that said facts had been admitted by J. A. Henry since the judgment had been affirmed.

It was further alleged that upon the trial of the law cause the only witnesses offered upon this most material issue, the rate of speed which complainant was making, were the complainant and the members of his family and J. A. Henry, and the members of his family, and that complainant and the members of his family testified that complainant was driving at a rate of speed of 12 or 15 miles per hour and that Henry and some of the members of his family testified that complainant was driving at a speed of 40 or 45 miles per hour; that it was therefore of vital importance in the trial of said law cause to obtain the testimony of disinterested witnesses on this material issue; that complainant had made long, careful and diligent search in his efforts to locate such witness who knew the speed of complainant's car but had been unable to locate any such witnesses; that since the affirmance of the case by the appellate courts and since said Henry had begun to exult over his victory, complainant had learned for the first time that said J. A. Henry had agreed to pay one Joe Smith $50 if he would refrain from testifying in said law cause and would keep secret the fact that he was an eye witness

to the rate of speed that complainant was making, which the said Joe Smith represented to have been only 10 or 15 miles per hour; that as a result of said offer by said Henry the said Joe Smith, together with his companion, Orville Turpin, concealed from complainant this vital and necessary testimony which otherwise complainant would have obtained and produced at said trial so that he could have shown by wholly disinterested witnesses the material fact that he was driving at a speed of only 10 or 15 miles per hour, which he could have done but for the fact that defendant, Henry, had promised the payment of said sum of money for the keeping secret of said testimony; and that as a result of said promise to pay said testimony was thus fraudulently concealed from complainant.

The bill also alleged that the entire proceeding in the law cause was a preconceived design to impose unjust liability upon complainant through fraud and chicanery; that said Henry and his family knew that complainant was in no fault or wrongdoing with reference to said accident, and that the said Mary A. Henry had admitted to him before she died that it was all her fault and that complainant was in no way to blame for said accident.

The bill further alleged that complainant was a citizen and resident of Monroe County, Tennessee; that said Henry and his family resided in Loudon County, Tennessee; that for the purpose of carrying out their fraudulent conspiracy to impose unjust liability upon complainant they invoked the aid of one J. J. Harrison, who was a citizen and resident of Loudon County, and had him send a false message to complainant that a certain criminal warrant had been issued in Loudon County for the arrest of complainant, charging him with some criminal offense in connection with the death of the said Mary A. Henry; that said Harrison in this way suggested that complainant should come to Loudon County at once and adjust this criminal matter by making bond so as to avoid arrest; that complainant was well aware of the fact that he had been guilty of no criminal misconduct, but not being aware of the fraud and chicanery about to be practiced upon him, he innocently and voluntarily went into Loudon County for the purpose of doing everything necessary and proper to clear himself of said false criminal charge; that in this manner said Harrison inveigled complainant into coming to his office in Loudon and immediately procured the sheriff of said County to come to his office and serve a civil summons in said law cause upon complainant; that complainant upon investigation found that no criminal warrant had ever been issued for him and that the entire purpose of said Harrison in making said fraudulent conspiracy with said Henry was to get complainant into Loudon County for the purpose of instituting said law cause against him so that

when it came to trial said Henry would get the benefit of a jury drawn from Loudon County who were strangers to complainant.

The three attorneys filed an answer admitting that they represented Henry and his children in said law cause, and that a lien on said recovery had been declared in their favor, but denying all of the allegations of fraud.

Jim Kennedy, into whose hands the execution had issued, filed an answer admitting that he had the execution and that he would have levied it upon complainant's property had he not been enjoined from so doing, but denying all the allegations of fraud.

Henry and his children filed an answer admitting the rendition of the judgment and the issuance of the execution thereon and alleging that had it not been for the issuance of the injunction the sheriff would have been able to levy said execution on a sufficient amount of complainant's property to have paid said judgment. They denied in detail each and every allegation of fraud and wrongdoing alleged in the bill. They also denied that the trial and adjudication of the law cause turned wholly upon the excessive speed of complainant's car, and alleged that altogether there were nine other acts of negligence upon the part of Dr. Sharp, which proximately contributed to the accident, all of which were set out in the declaration and sustained by the proof. They attached to and made a part of their answer certified copies of the following in the law cause: 1st, the summons, 2nd, the declaration, 3rd, the pleas, 4th, the final judgment, 5th, the bill of exceptions, 6th, the opinion and judgment of the Court of Appeals, 7th, the judgment of the Supreme Court. By an examination of these certified copies we can see that the adjudication of the law cause did not turn wholly upon the speed of Dr. Sharp and that the testimony of the said Henry as to the speed Dr. Sharp was making was only one of the items of material evidence introduced. Their answer also denied that the Chancery Court had the jurisdiction, right or power to enjoin the levy of the execution and collection of the judgment on the facts alleged in the bill.

After the answers were filed the defendants filed a motion "to dissolve the injunction heretofore granted in this cause for the reason there is no equity upon the face of the bill; and further move the Court to dissolve the injunction upon the bill and answers."

It should have been stated that in complainant's bill he swore that the statements therein contained were true "to the best of his knowledge, information and belief," and that in the answers of all of the defendants they swore that the statements therein made were "true and correct."

At the hearing of the above motion complainant filed affidavits of several persons to the effect that they had heard J. A. Henry state that he did not see Dr. Sharp's car until after the accident was over,

and that they had also heard J. A. Henry state that before her death, Mary A. Henry had said that the accident was wholly her fault. Complainant also filed an affidavit of several persons tending to show that Dr. Sharp had been lured into Loudon County so that process in the law cause could be served on him as alleged in the bill. Complainant also filed the affidavits of Joe Smith and wife, Ella Smith, to the effect that J. A. Henry soon after the accident told Joe Smith that he would pay him $50 not to let Dr. Sharp know what he (Joe Smith) knew about the accident. However, neither of these affidavits state that said Joe Smith accepted said offer or promise of J. A. Henry or acted on it in any way. The affidavits of Joe Smith and his supposed companion, Orville Turpin, read in the light of the evidence introduced in the trial of the law cause and contained in the bill of exceptions, show that they did not see the accident; that they were travelling in the opposite direction from the direction in which the mail carrier and Dr. Sharp who was following him were going; that they first met the mail carrier who had not then even reached the mail box; that they later met Dr. Sharp who was back of the mail carrier, and that the point where they met Dr. Sharp was at the top of a long hill which he had to go down before reaching a point still a hundred feet from the point of the accident. Therefore their affidavits that when they met Dr. Sharp he was driving only 10 or 15 miles per hour are not worth much to complainant.

On the hearing of the motion to dissolve made upon the bill and answers and upon the ground that there was no equity upon the face of the bill, the Chancellor sustained the same, ordered the dissolution of the injunction, dismissed complainant's suit at his cost, and rendered the judgments as hereinbefore stated on the injunction and cost bonds.

From this decree the complainant has appealed and has assigned errors as follows:

"1. The Chancellor erred in sustaining the motion to dissolve the injunction in this cause. The Chancellor should have overruled said motion and should have continued said injunction in full force and effect, and upon final hearing of said cause should have made said injunction perpetual.

"2. The Chancellor erred in dismissing complainant's bill and in rendering judgment against the complainant and the sureties on his injunction and prosecution bond. The Chancellor should have allowed said cause to go to proof upon the issues made up by the bill and answer, and should have sustained said bill and allowed complainant the relief sought thereby."

We think the decree of the Chancellor was correct.

Insofar as the question of complainant's having been tricked into Loudon County for the purpose of service of process in the law cause is concerned, if a fraud was committed on him in that regard he knew it before he pleaded in said law cause. Nevertheless he filed simply a plea of not guilty and defended said cause on its merits. His failure to raise said question in said cause was a waiver of it, Chambers v. Sanford, 154 Tenn., 134, and·we do not think he can now raise such a question in this cause.

The only other two propositions upon which complainant seeks to avoid the judgment in the law cause might be condensed to the following: 1st that witnesses for the plaintiff in said law cause testified falsely, as later admitted, and, 2nd, that the plaintiff in said law cause offered to bribe a witness not to tell what he knew.

It is clear to our minds that complainant cannot succeed on the first of these propositions. False swearing is certainly intrinsic fraud upon which complainant cannot attack said judgment. Keith v. Alger, 114 Tenn., 21. Suppose complainant should win this suit on the testimony of, say, five witnesses, that since the trial of the law cause said J. A. Henry had admitted to them that he testified falsely in said law cause. Then Henry could file a bill to impeach the decree in this cause upon the ground that since the trial thereof said five witnesses had admitted that they had testified falsely herein, etc. There must be an end to litigation, and upon this ground we resolve the first proposition against complainant.

Now with reference to the second proposition, i. e., that defendant, Henry, offered to bribe a prospective witness not to tell what he knew. We have hereinbefore shown that the affidavits filed by complainant not only failed to show that said prospective witness accepted said offer of a bribe or in any way acted thereon but did in fact show, when taken in connection with the evidence contained in the bill of exceptions in the law cause which was attached to and made a part of the defendant's answer, that said prospective witness did not see the accident, that his testimony would have been worth little to the defendant in said law cause and could not likely have changed the result thereof.

When we take into consideration that the motion to dissolve the injunction upon the ground that there was no equity upon the face of the bill and was upon the bill, which was only sworn to to the best of complainant's knowledge, information and belief, and upon the answers which were sworn to as being true and correct, we are convinced that the action of the Chancellor in dissolving the injunction was correct and proper. And the injunction being the only relief sought by the bill, the action of the Chancellor in also dismissing the bill and suit at complainant's cost was also correct. Box Company v. Lauderdale County, 144 Tenn., 266.

It results that in our opinion there was no error in the decree of the Chancellor and the same will be affirmed with costs.

Portrum and Snodgrass, JJ., concur.