MATILDA ELROD, Cross-Complainant and Petitioner in Error, v. ALBERT J. ELROD, Defendant in Error. —296 S. W. (2d) 849.

Western Section.  April 25, 1956.

Rehearing denied May 18, 1956.

Petition for Certiorari denied by Supreme Court October 5, 1956. Rehearing on Certiorari denied December 7, 1956. See 296 S. W. (2d) 856.

542

W. W. O'Hearn, Memphis, and Holmes & Holmes, Trenton, for petitioner in error.

Robert P. Adams and H. H. Elder, Trenton, for defendant in error.

BEJACH, J. This cause is before this Court on writ of error from the Chancery Court of Gibson County, Tennessee at Trenton. The cause originated as a suit for divorce filed July 6, 1949 by Albert J. Elrod against Matilda Elrod, the ground of divorce alleged being cruel and inhuman treatment. Subsequently, an amended bill was filed which set out in more detail the allegations of cruel and inhuman treatment. Matilda Elrod filed an answer and cross bill in which she denied the allegations of cruel and inhuman treatment and sought in her cross bill to recover separate maintenance from the original complainant, Albert J. Elrod. At the trial of the cause, the Chancellor ordered dismissal of the original bill for divorce on the ground that the causes of divorce alleged had occurred outside of the State of Tennessee, and that the complainant, Albert J. Elrod, had not been a resident of Tennessee for as much as two years at the time of filing the suit, as is, in such situation, required by sec. 8428 Williams' Code, sec. 36-803 Tenn. Code Ann. The Chancellor also ordered dismissal of the cross bill of Matilda Elrod for separate maintenance on the ground that she had

been guilty of ''such conduct and treatment to the complainant as to deprive her of any right of support by him''. Both the original bill and the cross bill were accordingly dismissed, and exceptions were noted by both complainant and cross complainant. The complainant, Albert J. Elrod, prayed and was granted an appeal, but he did not perfect same. No appeal was prayed by cross complainant, Matilda Elrod, but within the time allowed by law, she has filed the record in this Court for review by writ of error. This record is extremely voluminous, consisting of 1,425 pages of typewritten matter. Prior to entry of the final decree dismissing both the original bill and the cross bill, complainant, Albert J. Elrod, on November 4, 1953, filed a petition for finding of additional facts by the Chancellor, which petition requested the Chancellor to find additional facts, ''as announced, when the oral opinion was delivered in open court to the effect that the preponderance of the evidence made out a case of cruel and inhuman treatment, entitling complainant to a divorce, were it not for the two year residence statute.'' This petition was denied, the decree denying same reciting, ''The Court has carefully considered the record in the case and his previous finding of facts filed herein, and it is the opinion of the Court that the finding as filed, is the opinion of the Court, and the Court feels that the record does not justify the finding of any additional facts.'' The Chancellor had previously, on October 30, 1953, filed a written finding of facts and opinion, which is made part of and incorporated in the record.

Petitioner in error has filed two assignments of error in this Court, which are as follows:

"Assignment One

"The Chancellor erred in finding and decreeing that Cross-Complainant has been guilty of such conduct towards and treatment of Cross-Defendant that she is not entitled to support and maintenance by him; and in dismissing her cross action. (Decree tr. Vol. 5 page 1418) The Chancellor should have awarded her separate maintenance, for the reasons:

"(1) Cross-Complainant is the lawful and legal wife of Cross-Defendant, and is not now, willfully living apart from him.

"(2) The transcript, as a whole, and particularly the testimony, and exhibits thereto, of Cross-Defendant establish that he has refused to allow her to live with him; and has failed and refused to make provisions for her support and maintenance; and the transcript fails to disclose any legal justification therefor.

"(3) The transcript discloses an earnest and bona fide effort and offer upon the part of Cross-Complainant to renew the marriage relationship, which offer the Cross-Defendant has refused and declined.

"(4) To sustain the finding and decree of the Chancellor, it must be determined that Cross-Complainant has been guilty of such cruel and inhuman treatment of and toward Cross-Defendant as to warrant a divorce in his favor. Not only does the evidence contained in the transcript fail to disclose such conduct and treatment, it, affirmatively shows to the contrary.

"(5) The law and the evidence preponderates against the finding and decree of the Chancellor.

"(6) The effect of the Chancellor's finding and decree is to, forever, bar Cross-Complainant's right to support without regard to her future conduct, which is contrary to the law and public policy of the State and Nation.

## "Assignment Two

"The Chancellor erred in finding, in his written opinion filed in the record (tr. Vol. 5 page 1403) that Cross Complainant has been guilty 'of such conduct and treatment to the Complainant as to deprive her of any right of support by him'. This was error for the reasons set out in assignment one, and particularly because, in effect, it constitutes a perpetual bar against her right of maintenance and support, without regard to her future conduct and circumstances."

██ In this opinion, the parties to this cause will be designated as in the lower Court, or called by their individual names,—Albert J. Elrod being designated as complainant and as cross defendant, and Matilda Elrod being designated as defendant and as cross complainant. The merits of complainant's original and amended bills are no longer involved, since no appeal was perfected from the decree dismissing same, appeal being the only method of review authorized in such cases. (Gibson's Suits in Chancery 4th ed. sec. 1105-a). The Chancellor's decree dismissing the original and amended bills has therefore become final, so far as any right to relief sought by complainant, Albert J. Elrod, is concerned. Nevertheless, the allegations and proof in support of complainant's original and amended bills are material and must be

considered by this Court in disposing of this cause on the review sought by cross complainant of the Chancellor's action in dismissing her cross bill, writ of error being an appropriate method of presenting that action for review by this Court.

Learned counsel for cross complainant, Matilda Elrod, contended at the argument of this cause that it would be unnecessary for this Court or the member of same writing its opinion, to read all of the evidence in the cause, or any substantial part of same, because the matter could be disposed of on a question of law. The substance of this proposition of law, as asserted by counsel for cross complainant, is that since the ground of divorce alleged by complainant was cruel and inhuman treatment, and since correspondence between the parties which is copied into the record establishes that a reconciliation was effected before the bill for divorce was filed, complainant could not maintain his suit for divorce without alleging and proving some new or additional act or acts of cruelty, —none of which exist.

It is the law that cruel and inhuman treatment may be forgiven and cannot thereafter be relied upon as a ground for divorce except upon some revival or new act which brings back into life the former misconduct previously forgiven. McClanahan v. McClanahan, 104 Tenn. 217, 228, 56 S. W. 858; Garvey v. Garvey, 29 Tenn. App. 291, 203 S. W. (2d) 912; Humphreys v. Humphreys, Tenn. App., 281 S. W. (2d) 270, 281-282. In all of the cases where this principle of law has been applied, however, the parties had not only effected a reconciliation, but had actually resumed marital relations. In the instant case, the parties had not completely effected a recon-

ciliation. They had merely agreed to effect a reconciliation, which agreement was never consummated. We think that Mr. Elrod had a legal right to change his mind about the matter, and, having so changed his mind, he was entitled to rely on the conduct of Mrs. Elrod, alleged as cruel and inhuman treatment, in a suit for divorce. The general rule, which has been adopted in Tennessee, is that one spouse is not justified in leaving the other unless the conduct of the offending spouse is such as would, in itself, constitute a ground for divorce. Douglas v. Douglas, 156 Tenn. 655, 660, 4 S. W. (2d) 358. That has made necessary an examination of all of the evidence adduced in this cause, for the purpose of determining whether or not, but for the lack of jurisdiction resulting from failure of Mr. Elrod to await until after he had resided in Tennessee two whole years before filing his suit for divorce, he would have been entitled to a decree for divorce on the ground of cruel and inhuman treatment. If he would have been, in that situation, entitled to a decree for divorce, a finding of facts to that effect constitutes a complete defense for Mr. Elrod to Mrs. Elrod's cross bill for separate maintenance. With that proposition in mind, we have examined the evidence and have reached the conclusion that the clear preponderance of the evidence establishes that if the Court had had jurisdiction to try complainant's action for divorce, he would have been entitled to a decree on the ground that the defendant and cross complainant was guilty of such cruel and inhuman treatment or conduct as renders cohabitation unsafe and improper. Even if the evidence be considered equally balanced, the same result would follow. It was incumbent on Mrs. Elrod, before she could be entitled to a reversal by this Court, to establish that the evidence in the record

preponderates against the ruling of the Chancellor. Section 27-303, Tenn. Code Ann., Williams' Code, sec. 10622.

■ Cruelties warranting a divorce may result from a continuing course of abusive and humiliating treatment of one spouse by another, as in the case of a course of conduct calculated to torture the complaining spouse's mental health or emotional nature and affecting his or her bodily health. Garvey v. Garvey, 29 Tenn. App. 291, 300, 203 S. W. (2d) 912; Meeks v. Meeks, 27 Tenn. App. 279, 179 S. W. (2d) 189; Humphreys v. Humphreys, Tenn. App., 281 S. W. (2d) 270, 281; Schwalb v. Schwalb, Tenn. App., 282 S. W. (2d) 661. It is this character of cruel and inhuman treatment which is established by the proof in this cause.

As stated above, the record consists of 1425 pages of typewritten matter. The proof occupies 1296 of these 1,425 pages. The proof consists of depositions of both parties and of numerous witnesses. It covers the entire period of seventeen years during which these parties lived together as husband and wife. Obviously, it would be impossible to give any adequate summary of this testimony within the few pages of this opinion. Suffice it to say, that, although Mrs. Elrod categorically denied each and every incident referred to in the testimony of Mr. Elrod of an embarrassing or humiliating character, he is amply corroborated by many of the witnesses. Also, the testimony of Mrs. Elrod is impeached to a considerable extent, and it is clearly demonstrated that, in connection with her application for and temporarily obtaining alimony pendente lite, she was guilty of perjury. Also, a letter from Mrs. Elrod which was introduced in evidence tends to establish that she attempted to bribe one of Mr. Elrod's witnesses.

The Chancellor's opinion, which is made part of the record, gives us very little assistance. Most of the opinion deals with the question of jurisdiction, leading up to the conclusion that under the provisions of Section 8428 of Williams' Code, 36-803 Ann. Code of Tenn., the Court was without jurisdiction to try Mr. Elrod's suit for divorce. Having reached that conclusion and dismissed the divorce suit, the opinion continues:

"The Court is of the opinion that this statute, Section 8428 of the Code, applies only to a divorce bill and not to suits for separate maintenance and support, and the cross bill being only for separate maintenance and support, this evidence (the 1,296 pages of evidence referred to above) is such as to deny the defendant and cross complainant the right for separate maintenance, she having been guilty of such conduct and treatment to the complainant as to deprive her of any right of support by him. And for this reason, it is the opinion of the Court that the defendant and cross complainant is not entitled to any relief under her cross bill."

It is argued that because the Chancellor denied the petition of complainant, Albert J. Elrod, filed November 4, 1953, requesting an additional finding of fact "to the effect that the preponderance of the evidence made out a case of cruel and inhuman treatment, entitling complainant to a divorce, were it not for the two year residence—", this Court must conclude that such fact was not established by the proof in the cause. We cannot agree to this conclusion. The Chancellor's opinion cites Bevil v. Bevil, 8 Tenn. App. 490 as authority for considering cross complainant's suit for separate maintenance,

not withstanding his dismissal of the divorce suit; and cites Swan v. Harrison, 42 Tenn. 534; Nicely v. Nicely, 40 Tenn. 184; Roberts v. Roberts, 22 Tenn. App. 651, 125 S. W. (2d) 199, and Williams v. Williams, 146 Tenn. 38, 236 S. W. 938 as authorities justifying the denial of relief sought by cross complainant. Although his opinion does not refer to or cite Douglas v. Douglas, 156 Tenn. 655, 4 S. W. (2d) 358, we must presume that this authority was called to his attention, since it is cited and relied on in the brief presented to this Court.

■ The Chancellor's refusal of the request for the additional finding of fact may be sustained or justified on the theory that the finding which he had already made in the opinion and finding of fact which he had filed in the cause, the material part of which is quoted above, was ample to cover the situation and warrant the conclusion that, as a matter of law, complainant would have been entitled to a decree of divorce, if the Court had had jurisdiction. In any event, the cause is before this Court for trial de novo on the same evidence which the Chancellor considered. As stated above, it is the opinion of this Court that the clear preponderance of the evidence would have warranted such specific finding of fact by the Chancellor, and such specific finding of fact is now made by this Court.

It results that the petition for Writ of Error will be dismissed and the decree of the Chancery Court of Gibson County affirmed. The costs of this Court will be paid by petitioner, Matilda Elrod, and the surety on her bond for Writ of Error.

Avery, P. J. (W. S.), and Carney, J., concur.

On Petition to Rehear

BEJACH, J.  Petitioner in Error, Matilda Elrod, who was cross complainant in the lower court has filed a petition to rehear in this Court.  As was clearly indicated in the opinion of this Court filed April 25, 1956, this cause turns primarily on questions of fact.  As was there stated, the clear preponderance of the evidence was with the cross defendant; and this Court, trying the cause de novo, found as a fact that the original defendant and cross complainant, Matilda Elrod, was guilty of such cruel and inhuman treatment or conduct towards cross defendant, Albert J. Elrod, as rendered cohabitation unsafe and improper.

As was stated in our former opinion, cross complainant Matilda Elrod, contended that as a matter of law, since the ground of divorce alleged by complainant was cruel and inhuman treatment, and since a reconciliation had been agreed upon between the parties before the bill for divorce was filed, complainant, Albert J. Elrod, could not maintain his suit for divorce without alleging and proving that some new or additional act or acts of cruelty had occurred subsequent to the agreement to effect a reconciliation.  In our former opinion, we ruled against this contention of cross complainant, Matilda Elrod, and in disposing of same we said in our former opinion:

"In all of the cases where this principle of law has been applied, however, the parties had not only effected a reconciliation, but had actually resumed marital relations.  In the instant case, the parties had not completely effected a reconciliation.  They had merely agreed to effect a reconciliation, which agreement was never consummated.  We think that

Mr. Elrod had a legal right to change his mind about the matter, and, having so changed his mind, he was entitled to rely on the conduct of Mrs. Elrod, alleged as cruel and inhuman treatment, in a suit for divorce."

The petition to rehear recites:

"The original complainant, Albert J. Elrod, withdrew from petitioner in February, 1946. The Chancery Court found, expressly, that there were no acts of cruel and inhuman treatment after that date warranting a decree for divorce. This Honorable Court had not found to the contrary.

"Relative to the time of this withdrawal, complainant Albert J. Elrod, was asked the direct question, and made the direct answer:

"Q. 16: 'In other words, at that time you had not determined that her conduct was such as to make it improper and unsafe to cohabit?'"

"Answer: 'No.' Vol. 5, page 1393.

"We, respectfully submit that this outright statement negatives any claim of conduct rendering cohabitation unsafe and improper prior to the withdrawal. The Court has found that none existed thereafter."

The petition to rehear is predicated entirely on that part of same which is quoted above. We think the language of our former opinion, quoted above, is equally applicable to the contention presented in the petition to rehear. If Albert J. Elrod had a right to change his mind and refuse to consummate the reconciliation and

resumption of marital relations to which he had agreed, he had equally as much right to change his mind, reconsider the matter, and decide that the previous conduct of Matilda Elrod did constitute such cruel and inhuman treatment as to make cohabitation unsafe and improper, and to file a bill for divorce alleging such conduct as his ground for relief. If he had waited before filing his suit for divorce until after he had been for two whole years a resident of Tennessee, he would now have a decree of divorce, either from the Chancery Court of Gibson County, from this Court, or from both. Our former opinion holds that, but for the lack of jurisdiction, complainant Albert J. Elrod, would have been entitled to a decree of divorce, and that, such being the case, he had a good defense to cross complainant Matilda Elrod's suit for separate maintenance.

Our reasoning on this proposition is supported by the authority of our own decision in the case of Schwalb v. Schwalb, Tenn. App. 282 S. W. (2d) 661, 668, in which case, without any new or additional act of cruel and inhuman treatment, complainant Daniel C. Schwalb, decided to leave defendant, Ruth Hogue Schwalb, and sue for divorce on the ground of cruel and inhuman treatment, — which suit was sustained by this Court, reversing the Chancery Court of Madison County. Certiorari was denied by the Supreme Court. From that case, we quote:

"On June 6, 1953, complainant left the residence of the parties and has not returned to live there. Nothing particularly serious seems to have occurred on the occasion of complainant's departure. There was an argument and some difficulty about a dinner

engagement which the parties had, and Mr. Schwalb appears to have told his wife that she was "obnoxious'. It was not what happened on June 6th that caused him to leave, Mr. Schwalb states; but, 'It was just an accumulation of everything that had taken place before. It was a sort of straw that broke the camel's back.' " Schwalb v. Schwalb, Tenn. App., 282 S. W. (2d) 661, 668.

In the instant case, we think that Mr. Elrod had a similar right to reconsider the matter, and having reconsidered, to decide that the time had come to him to terminate the marital relations existing between him and Mrs. Elrod, because of her previous conduct.

We find nothing in the petition to rehear that causes us to change the ruling which we have heretofore made. The petition to rehear is, accordingly, overruled and denied.

Avery, P. J. (W. S.), and Carney, J., concur.