LEO MARSHALL MURRELL, Appellant, v. FRANCES MAY MURRELL, Appellee. —323 S. W. (2d) 15.

Western Section, Jackson. December 31, 1958.

Certiorari denied by Supreme Court April 8, 1959.

310 

W. C. Rodgers, Memphis, for appellant.

Hanover, Hanover, Hanover & Walsh, Memphis, for appellee.

BEJACH, J. This cause involves an effort by Leo Marshall Murrell, who was divorced from the appellee, Frances May Murrell, by a decree of absolute divorce granted in the Circuit Court of Shelby County, Tennessee, November 30, 1956, to have that decree set aside and declared null and void. For that purpose, on March 17, 1958, he filed a petition in the cause in which the divorce decree had been entered, same being Number 71466 R.D. in the Circuit Court of Shelby County. Pursuant to that petition, and as therein prayed for, new

process was issued and served on Frances May Murrell, who had been the complainant or petitioner in the divorce action and in whose favor the divorce had been granted. In response to said petition and process, the respondent, Frances May Murrell, entered her appearance April 7, 1958 by filing a "Motion to Dismiss Petition to Set Aside and Vacate Decrees Heretofore Filed". The grounds of said motion to dismiss are:

"1. That the petition on grounds therein stated, is unknown to the forms of equity;

"2. That the only proper method for setting aside a former decree for errors of law is by a bill of review, which the petition herein filed is not, and that same cannot be sustained as such because:

"(a) There are no errors of law apparent on the face of the decree,

"(b) The petition alleges no evidence or facts not already considered and passed on;

"3. That the proper method for setting aside a decree on the grounds of fraud would be by a separate bill in the Chancery Court;

"4. That all the matters and things alleged in said petition were fully considered at the original hearing of the cause, so that if any errors were made by the Court, the proper method to correct same would have been by appeal."

Said motion of respondent was sustained by the trial judge, and by order entered April 24, 1958, the petition to set aside the former decree of divorce was dismissed. From the order of dismissal, we quote as follows:

"That this Court is of the opinion that the petition heretofore filed by the defendant is not well taken, in that this Court has no jurisdiction at this time to hear and try the matters raised in the petition itself; that a full and complete hearing was accorded the petitioner at the original filing of this cause, and that his remedy, if he felt he was aggrieved by the final decree, was one of appeal; and that no error of law appears on the face of the decree.

"This Court is further of the opinion that in regard to the fraud claimed by the petitioner and alleged by him to have been practiced in this Court with regard to this Court's jurisdiction to try the cause originally, that the petitioner's proper remedy would be to file an original bill in the Chancery Court of this County."

From this order of dismissal, petitioner, Leo Marshall Murrell, has prayed and perfected his appeal to this Court. Here he has filed one assignment of error which is as follows:

"Assignment of Errors

"The Circuit Court erred in dismissing appellant's 'Petition to Set Aside and Vacate Former Decrees' of divorce, on the grounds that it had no jurisdiction 'to hear and try the matters raised in the petition', and that his only remedy was, to appeal from the original decrees, or 'file an original bill in Chancery Court' to set aside the decrees, on the grounds of fraud (R.p.045), because, all such decrees are subject to direct attack by such petition where the record, particularly, the bills or petitions, themselves,

fail to state sufficient cause of action to vest the Court with jurisdiction.''

For convenience, the parties will be referred to in this opinion as petitioner and respondent, Leo Marshall Murrell, being the petitioner, and Frances May Murrell, being the respondent, or referred to by their respective names, with perhaps an occasional reference to respondent, Frances May Murrell, as complainant, and Leo Marshall Murrell, as defendant, she having been the complainant in the original divorce action, and he the defendant therein.

The record before us includes the entire technical record of the divorce suit, no bill of exceptions having been filed to preserve the testimony therein offered; and, of course, the technical record consisting of appellant's petition and the respondent's motion to dismiss same. The motion to dismiss having been sustained, there was, obviously, no oral evidence at the last hearing, which could be preserved. The material facts, as presented by this record, are as follows:

On January 9, 1956, Frances May Murrell filed a petition for separate maintenance and support. This petition alleges that she and defendant, Leo Marshall Murrell, are both resident citizens of Memphis, Shelby County, Tennessee, and that they intermarried at Grenada, Mississippi March 17, 1951, from which union one child Patricia Anne, then two years of age, was born. This petition alleges further that she and defendant first lived in Mobile, Alabama; then in November 1951 they moved to New Orleans, Louisiana, where they remained until January 1954; that the situation between said defendant and herself became intolerable while living in New Or-

leans, and in January 1954, she filed a separation suit against him; and that while separated, she lived with her family in Memphis, Tennessee. It alleges further, that on March 25, 1955, while she was living at the home of her father, (in Memphis), said defendant tried to force his way into her father's house and created such a disturbance that her father was forced to call upon police authorities for assistance; and that after he was released, on April 27, 1955, after he had called and made arrangements to see their child, he grabbed said child and started to run down the street, whereupon she, her mother and two neighbors, ran after said defendant and secured the said child. Her petition alleges further that a reconciliation was effected in August 1955 and that at this time she spent a month with defendant at LaFayette, Louisiana; that he was advised that he would be sent to Memphis, Tennessee, and that she came to Memphis to secure a place for them to live in October 1955. Her petition alleges further that she did everything possible to make the marriage a success, and after the reconciliation, doubled her efforts; but that defendant's conduct made it impossible. Her petition refers to the defendant's resentment against a child of hers born of a former marriage, which resentment she alleges became more intense after their own child was born, and enumerates instances of misconduct toward and mistreatment of her said child by a former marriage, which instances she claimed were intended to and did harass her. Other instances of mistreatment by defendant of their own child are alleged, coupled with the allegation that she had told defendant to quit "pestering" her, whereupon he stated that she had called him a pest and that he intended to be one as far as she was concerned; and that in order to punish

her he refused to permit her to go to her mother's house to take their baby. The petition concludes with the allegation that:

"She would further show that the situation is so intolerable she is now leaving said defendant and going to the home of her parents; that she fears unless said defendant is restrained by law from so doing he will seek to forceably take from her the custody of her minor child and it is necessary the Court set times and places said defendant is to have said child with him; that as young as said child is, said defendant has so influenced said child that she does nothing petitioner wants her to do; that she has suffered great mental anguish over said defendant's conduct and realizes now the situation between them is hopeless and she can no longer live with him.

"Wherefore, she now charges that said defendant has been guilty of such cruel and inhuman treatment or conduct towards her as renders it unsafe and improper for her to cohabit with him and be under his dominion and control; that the said defendant offered such indignities to her person as to render her condition intolerable, thereby forcing her to withdraw.

"She would further show that she does not wish an absolute divorce at this time."

The petition prays for process, for injunction against defendant, Leo Marshall Murrell, and against the Plaza Branch of the First National Bank, which was made a party to the suit (which injunctions were granted at that time, but are not now material to the issues involved on the present appeal); prays that custody of their minor

child, Patricia Anne Murrell, be awarded to her; that she be awarded separate maintenance and support for herself and said minor child; that as alimony, she be awarded any and all interest the said defendant has in and to the furniture accumulated during their married life; that her attorney of record be awarded reasonable attorney's fees; and for such other and further relief as she may be entitled to.

On January 12, 1956, as defendant to the petition for separate maintenance and support, Leo Marshall Murrell, filed an answer in which he either denies or undertakes to explain and justify the allegations of the petition not admitted by him.

On January 13, 1956, an order was entered awarding alimony, child support, and attorney's fees pendente lite.

On May 17, 1956, a decree of divorce from bed and board was entered. This decree recites that complainant moved the Court to amend her original bill to ask for an absolute divorce, which motion was granted; and it also recites that the cause was heard on testimony of complainant and her witnesses, Mrs. Frank Flournoy and Mrs. G. R. Wright, and the testimony of defendant and his witnesses, John Murrell and Zorita Gentry, in open court, from which the Court concludes, "That defendant has been guilty of such cruel and inhuman treatment or conduct towards complainant as renders it unsafe and improper for her to cohabit with him and be under his dominion and control; but, it further appearing that in the Court's opinion there was a chance of a reconciliation between the parties herein and a bed and board divorce should not (obviously a clerical error for 'now') be granted for a period of six months from the

entry of this decree." After said recitals, the decree of May 17, 1956 grants a bed and board divorce for a period of six months, with a provision that at the end of said period, if no reconciliation has been effected, either party may apply for an absolute divorce. Said decree awards $100 per month for the support and maintenance of complainant and her minor child, custody of which is awarded to her, but with the provision that defendant is permitted to have said child from 9:30 o'clock a.m. to 6:00 o'clock p.m. each and every Sunday; but it enjoins defendant from entering the home where complainant was then living at 28 S. Barksdale Street, Memphis, Tennessee. After disposing of the injunction against the Plaza Branch of the First National Bank by dividing the bank account tied up by said injunction, and awarding attorney's fees to complainant's attorney, and adjudging costs against defendant, the decree contains the following provision:

"This cause is retained in court for any other or further orders the Court may elect to make, the welfare of the minor child requiring it, and for the purpose of making the bed and board absolute and either party may apply.

"To all of which the defendant respectfully excepts and prays an appeal to the Court of Appeals."

Neither the appeal from the decree of May 17, 1956, nor that from the final decree of November 30, 1956 which granted an absolute divorce to Frances May Murrell, was perfected.

Proceedings subsequent to the decree of May 17, 1956, as reflected by the record before us, consisted of a petition for change of child custody filed July 3, 1956 by Leo

M. Murrell, and a petition for injunction filed by Frances May Murrell against Leo Marshall Murrell seeking to restrain him from interfering with her in her home or elsewhere, or molesting her in any manner, or from seeking to harm her minor child,—which was filed July 6, 1956; a petition to make the divorce absolute filed November 21, 1956 by Frances May Murrell; the answer of Leo Marshall Murrell to the petition to make divorce absolute; and the final decree entered November 30, 1956, which grants an absolute divorce to Frances May Murrell, awards custody to her of Patricia Anne Murrell, with permission to Leo Marshall Murrell to have said child from 9:30 a.m. to 6:00 p.m. each and every Sunday; provides for alimony and child support; directs that defendant, Leo Marshall Murrell, turn over to Frances May Murrell certain furniture therein enumerated, and awards all other furniture purchased during their married life to defendant Leo Marshall Murrell; makes permanent the injunction restraining Leo Marshall Murrell from molesting complainant in any manner, from annoying and harassing her, and from coming in or about the home in which she resides at 28 S. Barksdale Street, Memphis, Tennessee; taxes the costs against defendant; and retains this cause in court "for the enforcement of this decree, if necssary, and for any other or further orders this Court may elect to make, the welfare of the minor child requiring it."

To said final decree entered November 30, 1956, defendant Leo Marshall Murrell excepted and prayed an appeal, which appeal was granted upon the execution of a bond in the sum of $250; but said appeal was not perfected.

The record before us discloses that between the date of the final decree, November 30, 1956, and the filing of the petition to set aside and vacate decrees filed by Leo Marshall Murrell March 17, 1958, he had appeared before Hon. Floyd M. Henderson, Judge of Division IV of the Circuit Court of Shelby County, Tennessee, by motion for leave to have Patricia Anne Murrell with him on his vacation, which motion was granted. The record does not show the date of entry of the order granting said motion, but it does appear from the contents of the order granting same, that he was permitted to take said minor child, Patricia Anne Murrell, with him to McEwen and Nashville, Tennessee between 9:00 o'clock Sunday morning, November 17, 1957 and Sunday, December 1, 1957 at about 6:00 o'clock in the evening, at which time he was ordered to return said child to her mother.

██ We need not consider, on this appeal, whether the decree sought to be attacked is void or merely voidable. If same was voidable only, we think the petitioner and appellant ratified and validated same by recognizing it as valid when he entered his appearance in the cause subsequent to the final decree, wherein he sought and obtained temporary custody of the minor child different from that provided for in the final decree; and, consequently, that he should not be permitted to question the validity of same by either direct or collateral attack, even in an independent suit in the Chancery Court filed for that purpose. On the other hand, if the decree sought to be attacked is void on the face of the record, it could be attacked, either collaterally or by a direct attack, in an appropriate proceeding filed for that purpose, which the present petition is not. The distinction between void and voidable judgments and decrees is pointed out in

Gibson's Suits in Chancery (5th Ed.) Sections 454 and 860, especially in Note 50 to the last named Section, and is ably discussed and ruled on in the opinion of Crownover, J. in the case of Clemmons v. Haynes, 3 Tenn. App. 20, in which opinion earlier Tennessee cases on the subject are reviewed.

In the case of Beard v. Beard, 3 Tenn. App. 392, 393, this Court held void a divorce decree granted on the ground of cruel and inhuman treatment, because it appeared on the face of the record that the Court was without jurisdiction, the bill having alleged cruel and inhuman treatment in the language of Section 4202, Shannon's Code (now 36-802, T. C. A.), but having failed to comply with the provisions of Section 4205, Shannon's Code (now 36-805, T. C. A.) by alleging with reasonable certainty time and place of facts and circumstances constituting cruel and inhuman treatment. In that case, however, the question was presented by appeal, which was then, and still is, the only mode of reviewing errors in divorce cases. Section 36-830, T. C. A. (section 4890, Shannon's Code). See also Davis v. Davis, 190 Tenn. 561, 230 S. W. (2d) 1002; and Massachusetts Bonding Co. v. McLemore, 4 Tenn. Civ. App. 633. In the instant case, an appeal was prayed but same was not perfected; and the present effort to attack the validity of the decree not appealed from was not made until considerably more than a year after that decree had become final. Be that as it may, counsel for appellant undertakes to bring the instant case within the rule of Beard v. Beard by pointing out that many of the incidents set out in complainant's original bill or petition for divorce as constituting cruel and inhuman treatment, alleged in compliance with the statutory requirement for naming with reasonable cer-

tainty of circumstances, time, and place, occurred outside the State of Tennessee, and that those specified as having occurred in the State of Tennessee were too trivial in character to constitute legal grounds for the granting of a decree of divorce. We cannot agree with this contention of appellant. The law is settled in Tennessee that cruel and inhuman treatment, within the meaning of this State's divorce laws, is not confined to acts of physical violence. Gardner v. Gardner, 104 Tenn. 410, 412, 58 S. W. 342; Meeks v. Meeks, 27 Tenn. App. 279, 286, 179 S. W. (2d) 189; Garvey v. Garvey, 29 Tenn. App. 291, 299, 203 S. W. (2d) 912; Schwalb v. Schwalb, 39 Tenn. App. 306, 328-329, 282 S. W. (2d) 661. Also, although some, or even most of the actions complained of as cruel and inhuman treatment, occurred outside the State of Tennessee, some of them are alleged to have occurred in Tennessee, and the trial court was authorized, on proof of such incidents, to grant a decree of divorce from bed and board and, within its discretion, from the bonds of matrimony. Carter v. Carter, 113 Tenn. 509, 82 S. W. 309; Fitzpatrick v. Fitzpatrick, 131 Tenn. 54, 173 S. W. 444; McFerrin v. McFerrin, 28 Tenn. App. 552, 191 S. W. (2d) 946; Holman v. Holman, 35 Tenn. App. 273, 244 S. W. (2d) 618. Also, the law is settled that acts constituting cruel and inhuman treatment, even though forgiven, are not wiped out but may be revived by some new act of cruel and inhuman treatment. McClanahan v. McClanahan, 104 Tenn. 217, 228, 56 S. W. 858; Garvey v. Garvey, 29 Tenn. App. 291, 203 S. W. (2d) 912; Humphreys v. Humphreys, 39 Tenn. App. 99, 281 S. W. (2d) 270; Schwalb v. Schwalb, 39 Tenn. App. 306, 282 S. W. (2d) 661; Elrod v. Elrod, 41 Tenn. App. 540, 296 S. W. (2d) 849. The evidence upon which the trial judge granted the divorce

from bed and board, which decree was later made absolute, is not preserved by bill of exceptions; and we must, therefore, presume that there was evidence before the court to sustain both the decree granting a divorce from bed and board and the subsequent decree granting an absolute divorce. Department of Highways and Public Works v. Gamble, 18 Tenn. App. 95, 73 S. W. (2d) 175; Louisville & N. R. Co. v. Brown, 1 Tenn. Civ. App. 269; Duane v. Richardson, 106 Tenn. 80, 59 S. W. 135; Union Bank v. Lowe, 19 Tenn. 225. But, it is contended by appellant that the learned trial judge was without authority to grant a divorce either from bed and board or from the bonds of matrimony on a petition which prayed only for separate maintenance; and for this contention he cites the case of Stephenson v. Stephenson, 201 Tenn. 253, 298 S. W. (2d) 717, 718. The fallacy of this contention is obvious from an examination of the facts of that case and from even a casual reading of the first headnote to same, which is as follows:

"An absolute divorce may not be decreed on a separate maintenance suit *in which no ground for divorce is pleaded* (emphasis ours), merely because it appears that there was no hope of reconciliation between the parties."

In the instant case, the original bill, labeled "Petition for Separate Maintenance and Support", (some of the material allegations of which have been summarized above), alleges in the language of the Code, T. C. A. sec. 36-802 "Cruel and Inhuman Treatment" and specifies in support of same, as indicated above, with reasonable certainty, the circumstances of time and place relied on as constituting such "cruel and inhuman treatment".

Also, said bill or petition is verified in the language required by Section 36-806, T. C. A., which certainly justified the trial judge in granting a decree of absolute divorce thereon, when the facts alleged therein had been proved to his satisfaction; (Lingner v. Lingner, 165 Tenn. 525, 56 S. W. (2d) 749); and especially so, after said bill or petition had been amended so as to pray for an absolute divorce.

Counsel for petitioner questions the jurisdiction of the Court to hear, initially, respondent's "Petition for Separate Maintenance and Support", because same was a suit in equity. This objection is utterly without merit because of the statutory provision set out in Section 16-511, T. C. A. which is as follows:

"Any suit of an equitable nature, brought in the circuit court, where objection has not been taken by demurrer to the jurisdiction, may be transferred to the Chancery Court of the county, or heard and determined by the Circuit Court upon the principles of a court of equity, with power to order and take all proper accounts, and otherwise to perform the functions of a chancery court."

In the instant case, not only did appellant fail to object to the Court's jurisdiction by demurrer, but, on the contrary, he filed an answer to the original petition and offered proof at the hearing on the merits; and, still later, filed another answer to respondent's petition to make absolute the divorce from bed and board.

Another ground of attack made by appellant on the jurisdiction of the trial court in the instant case, is that such jurisdiction was obtained by fraud. This fraud is alleged to consist of respondent's having sworn to her

original bill or "Petition for Separate Maintenance and Support" on January 6, 1956, but not having filed same until January 9, 1956, during which time she was still living with her husband. Both in "Petition to Set Aside and Vacate Decrees" filed in the Circuit Court, and in his brief filed in this Court, counsel undertakes to quote testimony of respondent; but, as no bill of exceptions was filed to preserve such testimony, we cannot consider same, and must presume that such alleged testimony, together with other testimony heard by the trial judge, was sufficient to justify the decree which was entered. In any event, in order to impeach a judgment for fraud, it is necessary to show that such fraud, as would justify vacating the decree attacked, was extrinsic of the matter tried in the case. Keith v. Alger, 114 Tenn. 1, 85 S. W. 71; Sharp v. Kennedy, 13 Tenn. App. 170.

But, and finally, even if there were merit in appellant's "Petition to Set Aside and Vacate Decrees", which we hold there is not, we, considering this case on the present appeal, would still be without authority or jurisdiction to grant relief on the record before us. The exclusive jurisdiction to grant relief, such as is prayed for, is by bill in the Chancery Court. Gibson's Suits in Chancery (5th Ed.), Sections 29 and 981; Arnold v. Moyers, 69 Tenn. 308; Goodman v. Tennessee Mining Co., 38 Tenn. 171; Thompson v. Keck Mfg. Co., 107 Tenn. 451, 64 S. W. 709; Clemmons v. Haynes, 3 Tenn. App. 20. From Gibson's Suits in Chancery (5th Ed.) Section 29, we quote as follows:

"The equitable or inherent jurisdiction of the Chancery Court includes all cases of an equitable nature, where the debt or demand exceeds $50.00.

These cases include the following, all of which are specially treated in this work:

\* \* \* \* \* \*

"29. All suits to have void judgments so declared, and to avoid voidable judgments.

"30. All suits to execute decrees, and to impeach decrees and judgments. Section 860, Note 50."

But it is insisted by appellant that since this was a divorce case, it was an equity case even though tried in the Circuit Court. There can be no doubt that divorce cases, even though tried in the Circuit Court, are treated as Chancery suits. Richmond v. Richmond, 18 Tenn. 343; Hawkins v. Hawkins, 36 Tenn. 105; Browder v. Browder, 188 Tenn. 488, 221 S. W. (2d) 526; Humphreys v. Humphreys, 39 Tenn. App. 99, 281 S. W. (2d) 270. So long as the instant case was still pending in the Circuit Court, prior to the entry of the final decree November 30, 1956, it was an equity case; and so far as it was retained in court by the final decree for orders with reference to the welfare of the minor child, it still continues to be an equity case. Since, however, appellant's petition has nothing to do with the welfare of the child, and therefore falls outside the retention clause of the final decree, it must be treated as if it were an original proceeding, seeking to impeach the decree of November 30, 1956. The absurdity of appellant's contention is easily demonstrated by simple analysis of the situation. If his contention were sound, it would follow that since a divorce case filed in the Circuit Court is still an equity case, the Circuit Court would have jurisdiction to impeach a decree in a divorce case, but not in any other type of case; whereas, the Chancery Court would have jurisdiction to

impeach any decree, whether entered in a divorce case or in any other type of case, and whether entered in the Chancery Court or in the Circuit Court. The mere statement of this proposition is sufficient to refute it. Even if the decree had been entered in the Chancery Court, it would still be necessary, if same were attacked, that such attack be made by a separate bill filed for that purpose. Even if such a proceeding were filed in a Chancery case, as a petition in the same cause in which the decree sought to be impeached had been entered, it would have to be treated as if it had been filed as a separate suit.

The further contention of appellant's counsel that the Circuit Court had jurisdiction of this proceeding under the provisions of Section 16-511, T. C. A., which is quoted above, is somewhat anomalous and wholly unrealistic. Having advanced the contention that the Circuit Court was without jurisdiction to hear the original "Petition for Separate Maintenance and Support", because it should have been filed in the Chancery Court, notwithstanding he did not, with reference to same, object to the Circuit Court's jurisdiction by demurrer, but, on the contrary, filed an answer and contested same on its merits; it seems peculiar that he should now contend that the Circuit Court has full equity jurisdiction and authority under the provisions of 16-511, T. C. A., even though respondent in her first pleading to his petition has objected to that jurisdiction by motion to dismiss his petition. In our opinion, the motion to dismiss, which was sustained by the learned trial judge, must be considered and treated as in all respects the equivalent of a demurrer objecting to the jurisdiction of the Circuit Court in this proceeding.

It results that the appellant's assignment of error in this Court must be overruled and the judgment of the lower court dismissing appellant's "Petition to Set Aside and Vacate Decrees" must be affirmed. The costs of the appeal, as well as those of the lower court incident to this proceeding, will be adjudged against the appellant, Leo Marshall Murrell, and the sureties on his appeal bond.

Avery, P. J. (Western Section), and Carney, J., concur.