# MEEKS v. MEEKS.—179 S. W. (2d), 189.

Western Section.   December 14, 1943.

Petition for Certiorari denied by Supreme Court, January 4, 1944.

280

Lucius E. Burch, of Memphis, for appellant.

Poston Cox, of Memphis, for appellee.

BAPTIST, J.   The complainant, G. Gordon Meeks, filed the bill in the case seeking a divorce from the defendant, Mary C. Meeks, and the custody of their three minor children. .

The bill sets out that the parties were married in Texas in March, 1934, and removed to Memphis in November, 1935, and that three children were born of the marriage. The bill then alleges:

"Since coming to Memphis, and particularly during the last three years, the attitude and actions of defendant have been such as to necessitate the institution of this action by complainant. Defendant has nagged and berated complainant and made him the object of outbursts of temper to an unbearable extent and has told complainant repeatedly that she did not have any affection for him whatsoever. Defendant has been in the company of a man other than complainant under circumstances and at times and places which, to say the least, are questionable, and although requested and implored to desist by complainant, defendant wholly failed and refused so to do. Defendant has maintained correspondence of a questionable nature and has kept a private postoffice box for that purpose, and has used funds furnished by complainant for the support and maintenance of defendant for the purpose of purchasing gifts and keepsakes for a man other than complainant. Recently defendant has told complainant she was through with him and would have no more to do with

him and on June 3, 1943, she left the family residence with bag and baggage and has since failed and refused to assume her position in the home. It has been necessary for complainant to request his mother to give up an excellent position in order to care for the children of complainant and defendant. That the conduct of defendant has caused complainant great anguish and distress, has caused him to become nervous and upset and unable to do his work with efficiency and dispatch, and that in so conducting herself defendant has been guilty of such cruel and inhuman treatment and conduct towards complainant as renders cohabitation unsafe and improper.''

The defendant answered, admitting the marriage of the parties and birth of the children and says:

''Defendant neither admits or denies the allegations contained in paragraph three in said original bill, but if said allegations are to affect her rights, she demands strict proof thereof. The defendant neither admits or denies that her conduct has caused complainant great anguish and distress or that it has caused him to become nervous and upset and unable to do his work with efficiency and dispatch. Defendant neither admits nor denies that she has been guilty of such cruel and inhuman treatment and conduct towards complainant as renders cohabitation unsafe and improper, but if said allegations are to affect her rights, defendant demands strict proof thereof. Defendant further submits the rights concerning the care and custody of her minor children insofar as her interest might be affected to the protection of this Honorable Court.''

The evidence in the case consisted of the testimony of the complainant and three other witnesses introduced in his behalf.

The complainant testified:

"That he is a young man who by his own efforts and application has become the president of an investment brokerage house. That he has been able to and has at all times provided and cared for defendant. During the last three years the defendant has practically daily nagged and berated complainant and made him the object of outbursts of temper and has told complainant repeatedly that she did not have any affection for him whatsoever. That defendant has on many occasions during the past three years absented herself from home for long intervals, both in the daytime and at night without informing complainant of her whereabouts. That she was remiss in her household duties and has neglected to care for the comfort and convenience of complainant and their children. That about a year ago a woman called complainant on the telephone and told him he had better keep his wife away from a certain man; that upon her return after an absence from home complainant asked his wife if she had been seeing another man and she admitted that she had. That complainant begged and implored his wife to desist from seeing the other man and she promised she would so desist. Notwithstanding, she repeatedly continued to absent herself from the residence for long periods, both in the daytime and at night, and complainant was extremely worried and upset because of his ignorance as to the whereabouts of his wife on these occasions. That notwithstanding the assurances of his wife, complainant was informed and believed she was seeing another man and this the defendant would not deny and would not desist from absenting herself from the residence notwithstanding her awareness of complainant's anxiety and worry. That a short time before the commencement of this action de-

fendant told complainant she did not love him and that he was physically repulsive to her and that she was leaving. That thereafter on June 3, 1943, with bag and baggage she left the household of complainant and established a separate residence and has refused to return to the family residence to assume the care of the three minor children. That it has been necessary for complainant to request his mother to give up an excellent position in order to care for his house and the children of complainant and defendant. That the conduct of defendant has caused complainant much worry and anxiety and has caused him to become nervous and upset and unable to do his work with efficiency and dispatch.

"Catherine Lovell testified that she was not acquainted with the complainant until a few months ago; that for the past three years the defendant was 'running after' another man with whom the witness herself was keeping company. That defendant followed this other man to his residence on a number of occasions in an effort to talk to him. That the defendant told the witness she (the defendant) was in love with the other man and that the witness 'could not have him.' That the other man reviled the defendant and said he desired to have nothing to do with her and requested her to desist from 'running after him.' Notwithstanding, correspondence has persisted between the defendant and the other man and defendant has purchased for him keepsakes and mementoes. That the foregoing facts were related by the witness to the complainant before the commencement of this action.

"Louise Collins Rike testified that she was a friend of both complainant and defendant and moved in the same society (since they have resided in Memphis), and they were frequent visitors in each other's homes. That the complainant was sober and moderate in his habits

and 'didn't talk much.' That the defendant argued with complainant a great deal and berated him in the presence of the witness and others. That she called defendant at frequent intervals and often found her away from home. That some months before the commencement of this action she found the defendant crying at the Nineteenth Century Club and defendant stated that she was 'in love with a boy who had gone away and she could not have him.' That sometime prior to the separation and again at the time of the separation the defendant stated to her that she did not love her husband and that she was going to leave him; that he was physically repulsive to her and she 'couldn't bear for him to touch her.'

"Amy McIntosh Meeks testified that she is the mother of the complainant; that she lived apart from complainant and defendant in another state; that she knew nothing of the grounds of divorce alleged. That she had been requested by complainant to return and care for his home and children after the separation between complainant and defendant. That she found the children's clothes in a ragged and unkempt condition and the condition of the household evidenced to her that the defendant had been a neglectful and slovenly housekeeper and mother."

The Chancellor very carefully and deliberately considered the case, as is evidenced by his exhaustive written opinion which is made a part of the record. In the opinion he reviews the history of divorce legislation in this state, and the opinions of the Appellate Courts of the state on the question of divorce on the grounds of cruel and inhuman treatment.

His conclusion was that the complainant was not entitled to a divorce and is thus stated in the decree:

"That the allegations of fact contained in the original bill are amply established by the evidence introduced, but

such allegations and proof in support thereof while tending to establish adultery on the part of the defendant do not establish cruel and inhuman treatment within the meaning of the divorce statutes. That while the Court is of the opinion that if any relief could properly be granted in this cause it would be a decree of absolute divorce, but since the Court is of the opinion the allegations and proof do not as a matter of law constitute or establish cruel and inhuman treatment, all relief must be denied complainant.''

The assignments of error are to this action of the Court.

This suit is brought under Sec. 8427 of the Code and provides as a cause of divorce:

''That the husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper.''

The Code Section in question, as well as the preceding statutes which allowed to the wife alone a divorce upon the grounds of cruel and inhuman treatment, and the Act of 1919, ch. 70, which allowed the husband the same relief, have been reviewed many times by the Appellate Courts of the state.

In Gardner v. Gardner, 104 Tenn., 410, 58 S. W., 342, 343, 78 Am. St. Rep., 924, Opinion by Justice McAlister, the rule is thus stated:

''It is now well settled by this court that cruel and inhuman treatment, within the meaning of the statute, is not confined to acts of personal violence, but includes such treatment as endangers the wife's health and renders cohabitation intolerable.

''In 5 Am. & Eng. Enc. Law (Old Ed.), p. 799, it is said: 'Cruelty as a cause of divorce is the willful persistent causing of unnecessary suffering, whether in real-

ization or apprehension, whether of body or mind, in such a way as to render cohabitation dangerous and unendurable.' ''

In Parks v. Parks, 158, Tenn., 91, 11 S. W. (2d), 680, 681, Opinion by Justice Swiggart, it is said:

''It is not likely that the statute of 1919 was enacted merely to protect a husband from physical violence at the hands of his wife. The usual disparity in physical strength, in the husband's favor, renders it unlikely that the statute was deemed necessary for protection against physical violence alone. . . . Having due regard to the character, the degree of refinement and sensibilities of the parties involved, as may be developed in the evidence, we can see no reasonable ground for giving to the statute of 1919 any fundamentally different construction or application than has been given to the similar provision for the protection of the wife.''

█ Cruel and inhuman treatment, within the meaning of our divorce laws, is not confined to acts of physical violence. Russell v. Russell, 3 Tenn. App., 232; Gardner v. Gardner, 104 Tenn., 410, 58 S. W., 342, 78 Am. St. Rep., 924; Fitzpatrick v. Fitzpatrick, 131 Tenn., 54, 173 S. W., 444; Shell v. Shell, 2 Sneed, 716.

Among the several cases cited and discussed in the complainant's brief is that of Stargel v. Stargel, 21 Tenn. App., 193, 107 S. W. (2d), 520, 525, in which it is said:

''It is seen that, among other things complainant avers in his petition in the instant case that defendant would curse complainant, that she would call him up at his work and abuse him on the phone; that defendant's constant nagging and fussing so disturbed the occupants of other rooms in the house occupied by complainant and his family, that complainant's landlord, because of this,

and also because defendant would not keep her apartment clean, asked complainant to give up the rooms; that complainant rented rooms in another house (on the Whites Creek Pike), but at this latter place defendant 'used offensive language to such an extent that the people asked for their rooms'; that defendant is constantly riding around in an automobile with another man, and tells complainant's friends that if she had a divorce she would marry the other man.

"We are of the opinion that the acts and conduct of the defendant thus described in the petition, together with her persistent refusal to attend to her household duties and her frequent absences from complainant's home for long periods of time, would cause any normal man a degree of mental suffering which would be unendurable and would constitute a cause of divorce within the contemplation of the statute."

In the case of Loving v. Loving[1] which is an unreported case, opinion by Judge Crownover, and a copy of which is appended to complainant's brief, the Court said:

"So it is cruelty towards a husband for his wife repeatedly to leave his home and their young children for several days without excuse and consort with other men, or to receive a former lover clandestinely in her room at night and say that she loved him, or to be guilty of such reprehensible, although not criminal, conduct with other men as is calculated to destroy her husband's peace of mind and happiness.

"See 19 C. J., sec. 91, page 51, citing many authorities.

"We think that the defendant's conduct has been such

---

[1]No opinion for publication.

that it constitutes cruel and inhuman treatment, even though she had not actually been guilty of adultery, and for this reason the third assignment of error is sustained."

In Corpus Juris Secundum, vol. 27, Divorce, sec. 28, page 553, the rule is thus stated:

"In accordance with the foregoing rules, cruelty warranting a divorce may result from a continuing course of abusive and humiliating treatment of one spouse by another, as in the case of a course of conduct calculated to torture the complaining spouse's mental or emotional nature and affecting his or her bodily health. So, cruelty is shown where a wife renders her husband's living with her unbearable by constant nagging and scolding, or fits of rage over a long period of time, or by bemeaning him and refusing to attend to her household duties."

In the instant case the undisputed facts are that the complainant has been able to and has provided for and cared for his wife; that during the last three years the wife has practically daily nagged and berated the husband and made him the object of outbursts of temper both in public and in private. She has told him repeatedly that she had no affection for him; on many occasions during the past three years she absented herself from home for long intervals, both day and night, without informing the complainant of her whereabouts; the wife has maintained for three years a questionable relationship with another man, notwithstanding the protests of her husband; she maintained a correspondence with this man and purchased for him keepsakes and mementoes; she told mutual friends that she did not love her husband, that he was physically repulsive to her and that she could not bear for him to touch her; she told mutual friends that she was in love with another man; finally

she told the complainant he was physically repulsive to her and thereupon left her husband and children and established a separate residence.

We think this conduct upon the part of the wife was such as to destroy the peace and happiness of the home; and would cause any normal man a degree of mental suffering that would be unendurable, and constitutes a cause for divorce within the contemplation of the Statute.

Since this case was presented in argument the Divorce Proctor for Shelby County, Mr. Poston Cox, has filed a brief in which there is raised a jurisdictional question, the contention being that the bill does not comply with Section 8430 of the Code which provides that the bill "shall set forth particularly and specifically the causes of the complainant, with circumstances of time and place, with reasonable certainty." It is conceded in the brief that if the complainant had substantially charged in the bill what he proved he would be entitled to a decree in his favor, but the contention is made that having failed to charge these items with sufficient particularity the Court acquired no jurisdiction in the case.

The Court's attention is called to the case of Beard v. Beard, 3 Tenn. App., 392, opinion by Judge Heiskell. In that case it was held that the Court acquired no jurisdiction for the reason that the bill merely charged, in the language of the Statute, that the defendant "was guilty of such cruel and inhuman treatment toward petitioner, as to render it unsafe and improper for her to cohabit . . . and be under his dominion and control," with no allegation of time and place as required. In the case we find cited Anderson v. Anderson, 3 Tenn. Civ. App., 423, in which it is said:

"It is not sufficient in a bill for divorce to aver generally that the defendant was guilty of cruel and inhuman

treatment of the wife and had offered indignities to her person. The pleader must go further and aver the facts or [such] courses of conduct which justify the charge that the defendant is guilty of these wrongs.''

The Court's attention is also called to the case of Clardy v. Clardy, 23 Tenn. App., 608, 136 S. W. (2d), 526, 530, in which the Court said:

''In view of the statute just cited, it was held in Beard v. Beard, 3 Tenn. App., 392, and other cases there cited, that if a petition for divorce charges cruel and inhuman treatment in the language of the statute prescribing causes of. divorce, but it does not set forth particularly and specifically the causes of complaint,. with circumstances of time and place, with reasonable certainty, 'proof becomes irrelevant and, useless, and no decree for divorce can be made.'

''It is a necessary corollary of the rule thus declared in Beard v. Beard, supra, and the other cases there cited, that a divorce will not be granted upon evidence of an instance of cruel treatment not mentioned in the pleadings. This is a specific application of the elementary rule that proof without pleadings will not support a decree.

'' 'Every fact essential to the complainant's title to maintain the bill, and obtain the relief, must be stated in the bill, otherwise the defect will be fatal. For no facts are properly in issue unless charged in the bill; and of course no proofs can generally be offered of facts not in the bill; nor can relief be granted for matters not charged; although they may be apparent from evidence; for the Court pronounces its decrees secundum allegata et probata. The reason of this is, that the defendant may be apprised by . . . what the charges and allegations are against which he is to prepare his defense. If the rule were otherwise, the defendant would not only

not know what charges he would be required to meet, but the complainant, by thus failing to inform the defendant, would be taking advantage of his own wrong. Besides, the Court has no jurisdiction of any matter not contained in the pleadings; and if the Chancellor should assume to make an adjudication not justified by the pleadings, his decree would be coram non judice, and void on the face of the proceedings; and this would be so, even though the facts proved would have abundantly supported the decree had there been pleadings justifying the proof.' Gibson's Suits in Chancery (4 Ed.), sec. 142.''

In that case it was sought to introduce a letter alleged to have been written by the complainant and delivered to defendant's brother, in which the complainant falsely and maliciously charged the defendant with the felonious crime of concealing stolen cigarettes. The Court held in substance that, not having been alleged in the pleadings, the evidence was incompetent.

█ In the instant case we are of the opinion that the bill sets forth the causes of complaint with sufficient particularity and the circumstances of time and place with reasonable certainty, so as to give notice to the defendant in order that she might defend. No question was made before the Chancellor as to the sufficiency of the allegations, and the defendant contents herself with answering that she neither admits nor denies the same.

In the reply brief of the complainant, the Court's attention is called to the case of Brown v. Brown, 159 Tenn., 551, 552, 20 S. W. (2d), 1037, opinion by Justice Chambliss, in which it is said:

''As amended, the bill contained the language of the relevant subsections of section 4202 of Shannon's Code. As bearing on section 4205, it charged that 'said defend-

ant had abused and often mistreated your complainant, he has slapped, struck, and otherwise mistreated her with his fists and mechanical instruments'; and further, 'your complainant avers that the said defendant undertakes to come into her home and abuse her by striking her violently as hereinbefore averred, and by undertaking to drive her by force of arms away from her said home, and as a result, make her an outcast in the world, and dependent upon the charities for her support and sustenance.' Elsewhere the location of the home is given as on Chestnut Hill, in Rockwood, Roane county, Tenn.

"From the language above quoted we think it is apparent that the cause of complaint is set forth with reasonable certainty, and also the place—the home in Rockwood. Is the time of the occurrences charged with sufficient definiteness to comply with the requirements of reasonable certainty in the statute?

"It must be borne in mind that reasonable certainty only is exacted, not 'mathematical certainty,' as expressed by Judge Cooper in Dismukes v. Dismukes, 1 Tenn. Ch., 266. And the manifest purpose of the statute must be borne in mind, which was to convey notice to the defendant in order that he might defend intelligently. . . .

"Again, the bill was filed October 1, 1926. No demurrer was filed, or other steps taken at that time to challenge the sufficiency in the regards now questioned, nor other steps to induce greater certainty. But answer and cross-bill were filed and the cause put at issue, followed by the taking of proof. Many depositions were taken. The cause was not tried until February, 1928, and meanwhile, as early as May, 1927, various depositions were, with cross-examination by defendant, directed to the charges of cruel and inhuman treatment in which

the time and other circumstances were definitely set forth. This was some nine months before the trial. It is plausibly insisted that the defendant was thus clearly and definitely advised of the time and other circumstances.

"While proof may not be looked to to supply jurisdictional or other essential requirements of pleading, a doubt as to the sufficiency of the notice conveyed by allegations in the pleading may be resolved against a defendant when it appears that the defendant proceeds in apparent acceptance of the sufficiency of the pleading in this particular, and when in the progress of the cause all possible doubt is removed by the proof in ample time for the protection of the defendant, this is in harmony with our practice and holdings."

The rule as stated in the above case was later approved in Baeyertz v. Baeyertz, 171 Tenn., 190, 196, 101 S. W. (2d), 689, opinion by Judge Chambliss.

The assignments of error are sustained and the decree of the Chancery Court is reversed.

A decree will be entered here granting the complainant an absolute divorce and custody of the three minor children, with the right of the defendant to see the children at reasonable and proper times.

The defendant will pay the costs.

Anderson, P. J., and Spragins, S. J., concur.