# WILLIE H. STONE v. WILLIAM F. STONE.
## —409 S.W.(2d) 388.

Eastern Section. August 9, 1966.

Certiorari Denied by Supreme Court, November 7, 1966.

608

Charles L. Claunch and Robert W. Hill, Jr., Chattanooga, for Willie H. Stone.

L. D. Miller, Jr., Chattanooga, for William F. Stone.

McAMIS, P. J. Willie H. Stone filed the original bill herein, seeking an absolute divorce on the ground of cruel and inhuman treatment. The defendant William F. Stone filed an answer and cross bill seeking an absolute divorce on the same ground. On a record of more than 1800 pages the Circuit Judge sustained the wife's bill and dismissed the cross bill. After a reference to a Special Master and, upon a concurrence in his findings, the Court awarded each of the parties one-half the total value of their joint holdings valued at $127,564.31. In addition, the Court rendered a "judgment" against defendant for $12,583.00, less a credit of $1080.00 paid as alimony pendente lite, for "necessaries" furnished by the wife during twelve years they were married.

Both parties have appealed complaining of certain findings and conclusions of the court respecting the division of property and alimony. The husband also appeals from the action of the Court in granting a divorce to complainant and denying a divorce under the cross bill. We consider first the correctness of the Court's action in sustaining the original bill of the wife.

The original bill charges that on the evening of July 21, 1964, defendant without any warning or provocation announced to complainant: "I think we ought to get a divorce; we have nothing in common", at the same time insisting that complainant was mentally ill and stating that he no longer loved complainant; that, when com-

plainant consulted a psychiatrist following this incident, defendant became enraged when told complainant had been advised by the doctor to resume her work as a legal secretary five days a week, stating that he intended to move out of the house and consult a lawyer about a divorce.

The bill alleges that on August 20, 1964, complainant was reading in bed when defendant, without any sort of provocation came angrily into the bedroom, "turned the television on full blast and jerked the light cord from the electric socket, telling petitioner that 'she would have to get her g-d-m education somewhere else.' "

The bill contains numerous allegations that defendant continuously harassed and brow-beat complainant while permitting her to carry the financial burden of the household and on one occasion carried a stick around the house "with a finger painted on it, beating the side of his leg with it in front of petitioner, in an attempt * * * to harrass and agitate her mentally."

We have very carefully read the hundreds of pages of testimony on which the Court sustained the charges of cruel and inhuman treatment and can not say the evidence preponderates against these findings. The question is essentially one of credibility which the Circuit Judge was better able to determine than we can possibly be upon the mere reading of a printed record.

As to most of the incidents mentioned in the bill and fully sustained by complainant's testimony defendant contented himself with saying he could not remember. As to the incident of the stick, he testified he was attempting at the time to quit smoking and, if the incident occurred, it must have been because he was nervous. He

disclaimed any attempt to frighten defendant. He admits making the remark to friends and neighbors that complainant was mentally ill.

Complainant says she became greatly upset when defendant came into the bedroom and when he suddenly announced that he no longer cared for her and wanted a divorce. She is corroborated in this by Mr. Claunch, her employer, who testified she was so upset and troubled on August 22, 1964, that she could not perform her duties at the office.

These charges of cruel and inhuman treatment must be viewed in the light of a nervous breakdown suffered by complainant in 1958. No doubt this condition placed a strain upon defendant and upon the marriage. However, in view of the delicate balance of complainant's nerves, defendant was not justified in the conduct ascribed to him.

In Gardner v. Gardner, 104 Tenn. 410, 58 S.W. 342, the Supreme Court said:

"It is now well settled by this court that cruel and inhuman treatment, within the meaning of the statute, is not confined to acts of personal violence, but includes such treatment as endangers the wife's health and renders cohabitation intolerable.

"In 5 Am. & Enc. Law (Old Ed.), p. 790, it is said 'Cruelty, as a cause of divorce, is the willful, persistent causing of unnecessary suffering, whether in realization or apprehension, whether of body or mind, in such a way as to render cohabitation dangerous and unendurable.' "

See to the same effect Fitzpatrick v. Fitzpatrick, 131 Tenn. 54, 173 S.W. 444; Parks v. Parks, 158 Tenn. 91, 11 S.W.2d 680; Meeks v. Meeks, 27 Tenn.App. 279, 179

SW.2d 189; Garvey v. Garvey, 29 Tenn.App. 291, 203 S.W.2d 912. Other cases of similar bearing could be cited.

The charges of cruel and inhuman treatment contained in the cross bill seem to us too trivial to warrant detailed discussion in this opinion. We find no error in the action of the Court in sustaining the original bill and dismissing the cross bill.

Other questions relate to property settlement and alimony. The parties were married in 1952 when both were in their early thirties. Complainant's first husband was killed in World War II. Defendant had never been married. They have no children.

During the early years of the marriage and until 1958 when complainant suffered a nervous breakdown both parties were employed. During these years complainant's income probably exceeded that of defendant. At the time of the separation in 1964 and for a number of years prior thereto, except for a short period when she worked only three days per week, complainant was continuously employed at a salary of $500.00 per month. During these later years defendant's income from salary, rents, and dividends seems to have increased. Complainant testified his income was approximately $11,000.00 per year. Defendant was somewhat evasive on this question. The Master found that between the filing of the bill on September 24, 1964, and the conclusion of the proof on the reference on July 23, 1965, he received mostly from salary and bonus $8,800.00.

The Master also found that during the period of the marriage complainant contributed "for necessaries" $12,583.00, while defendant contributed for the same purpose $22,999.00; that the present market value of the real

estate of both parties is $71,900.00, total value of household furniture $6,500.00; total value of cash, stocks, bonds, interest in business enterprises, notes and accounts receivable and personal accounts receivable and other items of personal property $49,164.21, making a total combined worth of $127,564.31.

The Court concurred in all of these findings and others to be hereinafter mentioned. Paragraph 7 of the final decree is as follows:

"7. Upon awarding of the divorce to petitioner, Willie H. Stone, the common law and statutory rights of the wife as petitioner herein are fully satisfied by decreeing a division or allocation of the real and personal properties of both the wife and the husband in the following manner: by adding to the total value of the husband's properties the total value of the wife's separate property or estate, by then adjudging that all costs in connection with the divorce proceedings, including the usual court costs plus the fee awarded to the Special Master plus the attorney fee for petitioner plus the attorney fee for defendant, William F. Stone, shall be paid equally from the separate properties of the petitioner wife, Willie H. Stone, and from the properties of the defendant husband, and that upon such satisfaction of all of said costs, one-half (½) in value of the remainder, if any, shall be awarded to the petitioner wife, and one-half (½) of the remainder, if any shall be awarded to the defendant husband, and that the petitioner wife is awarded a judgment against the defendant in the amount of $12,583.00, as determined by the Special Master as being for 'necessaries' furnished by the petitioner wife from her own separate estate and funds during the term of the marriage, the furnishing of which was the common law responsi-

bility of the defendant husband, less a credit on said judgment in the amount of $1,040.00, which represents the alimony pendente lite awarded by the Court and paid by the defendant husband, William F. Stone, to petitioner wife from June 3, 1965, the date on which the petitioner wife was awarded a divorce from the defendant, William F. Stone, the payment of which judgment in the net amount of $11,543.00 in favor of petitioner wife, Willie H. Stone, is to be secured by a lien herein imposed and placed upon the real estate at 114 South Forrest Avenue, Lookout Mountain, Hamilton County, Tennessee, the legal description of which is herein elsewhere set forth, and which property is presently vested in the names of William F. Stone and Willie H. Stone as tenants by the entirety. The values herein used are as determined by the Special Master in his report filed herein on October 5, 1965.''

Our task in reviewing this decree is made difficult by the absence of a satisfactory finding of facts, the failure to differentiate between alimony and division of the respective properties of the parties and by the judgment rendered against defendant for ''necessaries'' furnished by her. As to the latter we said in Webb v. Webb, Anderson Equity, decided December 4, 1962, (opinion unpublished) :

''During the marriage both parties have been employed. From their joint earnings have come the living expenses of the home and the personal expenses of both parties and of the two children of defendant. Defendant seems to have entertained the belief that since it is the husband's duty to support his wife she should be awarded all of the property to the extent of her earnings during the marriage of more than $35,000.00. To adopt this basis

of adjusting the property rights of the parties would degrade marriage into a commercial adventure and require an intricate, complex and often impossible accounting. The earnings of the wife are only one of the factors to be considered in arriving at a fair and equitable division of the property."

■■ We adhere to this view and sustain defendant's assignment of error complaining of this portion of the decree. To hold otherwise would bankrupt most husbands whose wives have worked outside the home during the marriage upon granting a divorce to the wife. Except under exceptional circumstances there should be a well-nigh conclusive presumption that each of the marital partners makes contributions to the family needs and welfare out of love and a sense of duty with no expectation of re-imbursement. As said in Webb v. Webb these contributions are to be considered only as one factor bearing on the proper settlement of property and the award of alimony.

There is nothing in Raskind v. Raskind, 45 Tenn.App. 583, 325 S.W.2d 617, to the effect that a wife upon obtaining a divorce is entitled to recoup the day to day contributions made to the family from earnings outside the home.

■■ Factors to be considered in fixing the amount of alimony are the earning capacity of each of the parties, their separate property holdings, their condition of health, age and station in life, the way and manner in which the estate has been created, including, as said, the contributions made by the wife from her earnings and the merit or lack of merit of the respective parties. Williams v. Williams, 146 Tenn. 38, 236 S.W. 938; Walden v. Walden. 13 Tenn.App. 337. As said by Presiding Judge

Anderson in Rush v. Rush, 33 Tenn.App. 496, 232 S.W.2d 333, no hard and fast rule as to amount can be laid down and the facts of each particular case must govern.

The report of the Master concurred in by the Judge showed that the value of complainant's property at the time of the marriage was $26,770.00. While producing rent this property has been allowed to greatly depreciate and is now worth according to the Master's report $6,500.00. It is rental property on Foust Street the title to which still stands in her name. She will be allowed to retain this property free of any claim of defendant. In addition she is entitled to be re-imbursed for any contribution made to property standing in defendant's name including, as we understand, $900.00 advanced by her and invested in the property at 403 East and West Road, $2000.00 which the Master found she increased by her time and money the value of the home and furniture at 406 East and West Road; $750.00 increase by the same means in the value of 403 East and West Road, plus $1512.95 paid out by complainant since September 24, 1964, to protect and preserve the properties of the parties, as found by the Master.

Complainant is also entitled to be reimbursed for $3500.00 which the Master found she contributed to the value of household furniture. The total amount of all re-imbursements to which complainant is entitled is $8,662.95.

The jointly owned personal property consisting of cash $916.66, check $1033.00, stocks $2077.62, notes $6510.52, making a total of $10,537.80, will be equally divided. Any stocks and bonds and the automobile in complainant's name will be and remain her property, all having a value of approximately $3600.00. Adding the

total of the above re-imbursements, to $5,268.90, one-half jointly held personal property, plus $6500.00 for Forrest Street property, plus $3,613.00 for the automobile and stocks owned by complainant individually will give com-plainant an estate of approximately $24,044.85. Deducting this amount from $127,564.27 we find that defendant will have an estate of $103,519.42.

The greater portion of the property accumulated since the marriage came to defendant by inheritance, including the home at 406 East and West Road. The Master found that he owned at the time of the marriage $35,610.00 while the value of complainant's holdings as above noted at that time was $26,770.00.

Giving due weight to all the elements to be considered as above outlined we think complainant is entitled to receive as alimony the sum of $27,500.00. In view of the provision of the deed that the home is to be free of any claim of the grantee's wife, some question might be raised as to complainant's title if this property should be awarded to her as a part of the alimony. There is some merit in defendant's desire to keep it, since it is his ancestral home. On the other hand, we recognize that it was complainant's home for some 15 months before the separation as well as since that time. The property has a present value of $17,850.00. All elements considered we think defendant should be allowed to retain this property. The household furniture will go to complainant at $6,-500.00 as held by the Circuit Court but credited on the above award of alimony. Complainant will be awarded the property at 114 South Forest Avenue valued at $18,450.00 and that amount credited on the amount awarded as ali-mony.

Both parties complain of the appointment of a Special Master and the fee of $2,000.00 allowed to him.

While it appears the appointment of the Special Master entailed an unusual amount of cost, and that much of this could have been avoided, we know of nothing this Court can do to relieve the parties of this burden. The Master has done the work and must be paid.

■ There remains the question of fees of counsel for both parties. The Master found that a reasonable fee to Leonard R. Tanner, Jr., as counsel for complainant would be $5,000.00 and that a fee of $4,500.00 should be allowed L. D. Miller, Jr., as attorney for defendant. The Court concurred in these findings and divided the amounts equally between the parties. It is not insisted there is no evidence to sustain this finding and we can not say the Court abused its discretion in fixing the amount and dividing it between the parties as part of the costs.

Since the Circuit Judge determined the questions of property and alimony on an entirely different theory and we have been compelled to make our own findings as to specific items of property largely without help from the briefs we invite counsel to call our attention to any errors as to the property to be restored to complainant as her separate property. We feel in view of the tremendous expense already incurred we should admonish counsel to make every effort to agree on a final determination of all questions in keeping with this opinion to avoid the necessity of any findings on the remand. However, a remand will be necessary to effect a division of the property and, in the absence of agreement, a decree vesting and divesting title in harmony with this opinion.

Costs of the Circuit Court will remain as taxed. Costs of appeal will be taxed to defendant and surety on his appeal bond.

Cooper and Parrott, JJ., concur.