LINDA TRUEBLOOD STURDIVANT,  )
                             )
        Plaintiff/Appellee,  )        Appeal No.
                             )        01-A-01-9804-CH-00198
v.                           )
                             )        Williamson Chancery
ROBERT WILLS STURDIVANT, JR.,)        No. 23395
                             )
        Defendant/Appellant. )

**FILED**

**March 25, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

## COURT OF APPEALS OF TENNESSEE

### APPEAL FROM THE CHANCERY COURT FOR WILLIAMSON COUNTY

### AT FRANKLIN, TENNESSEE

### THE HONORABLE HENRY DENMARK BELL, CHANCELLOR

ROBERT TODD JACKSON
Jackson Law Office
222 Second Avenue North, Suite 419
Nashville, Tennessee  37201
        ATTORNEY FOR PLAINTIFF/APPELLEE

M. T. TAYLOR, JR.
339 Main Street
Franklin, Tennessee  37064
        ATTORNEY FOR DEFENDANT/APPELLANT

### AFFIRMED AS MODIFIED
### AND REMANDED

# <u>OPINION</u>

This is an appeal from a divorce decree in which the only issue raised by the appellant husband is the action of the trial court in granting permanent alimony, rather than rehabilitative alimony. In addition, the appellee wife seeks attorney fees relative to the appeal. While we affirm the decision of the trial court to grant permanent alimony, we vacate the amount set by the trial court for reasons which follow.

At the time of the divorce, the parties had been married for seventeen years and had two minor children, ages fourteen and ten. Appellant, Robert W. Sturdivant, Jr. ("the Husband"), was 49 years of age and Appellee, Linda Trueblood Sturdivant ("the Wife"), was 48 years of age. The parties stipulated as to many of the issues before the trial court, and these stipulations reflected by the trial court's interim order entered February 12, 1998 are as follows:

1. Pursuant to T.C.A. § 36-4-129 the wife is granted an absolute divorce from the husband on grounds of inappropriate marital conduct.
2. Custody of the two minor children of the parties is awarded to Wife.
3. Visitation scheduled for Husband.
4. Child support is set at $1,330 per month consistent with Tennessee Child Support Guidelines.
5. Husband must provide Wife with copies of his tax returns and wage statements and has an affirmative duty to notify the wife in writing should he receive as much as a 15% increase in his income.
6. Husband will not allow anyone with whom he is romantically involved to spend the night with him during child visitation.
7. Husband will not use tobacco or wood burning fireplace nor consume alcoholic beverages in the presence of the children nor shall he allow the minor children on the houseboat or to go swimming without additional adult supervision.
8. Husband shall provide health insurance for the benefit of the minor children and pay all medical, dental and orthodontic expenses not covered by insurance.
9. Husband shall keep in effect a $200,000 life insurance policy with Wife as irrevocable beneficiary for the use and benefit of the minor children during the minority of the children.

10. Each party will receive all items of household furnishings and other personal property presently in their respective possession.

11. Wife shall receive $10,325 as her interest in a worker's compensation settlement for Husband's previous injury.

12. Husband will pay one-half of college tuition, room and board for the minor children at a university comparable to the University of Georgia at Athens.

13. Wife receives $28,193.50 judgment against Husband for alimony and child support arrearages under pendente lite order.

14. Wife is awarded judgment for $2,309.73 against Husband for unpaid medical expenses under pendente lite order.

All other matters were reserved.

On February 26, 1998, the trial court adopted the marital property division proposed by the Husband, and entered a judgment for permanent alimony in the amount of $2,000 per month and required each party to pay their own attorney fees and one-half each of the court costs. The Husband's motion to alter or amend was denied and he has appealed.

Since the Husband questions only the award of permanent alimony the scope of the appeal is quite limited. In addressing this question this court has held:

There are no hard and fast rules for determining the extent of a person's obligation to support a former spouse. *Stone v. Stone*, 56 Tenn.App. 607, 615-16, 409 S.W.2d 388, 392-93 (1966); *Walden v. Walden*, 13 Tenn.App. 337, 344 (1930). The decision is factually driven and calls for a careful balancing of numerous factors, including those listed in Tenn.Code Ann. § 36-5-101(d) (Supp.1988). Accordingly, appellate courts give wide latitude to a trial court's alimony and maintenance decisions.

However, spousal support decisions are subject to appellate review pursuant to Tenn.R.App.P. 13(d). Thus, in order for a support decision to be upheld, it must be based upon the proper application of the relevant legal principles and upon a preponderance of the evidence. . . .

An award for spousal support cannot be modified unless there has been a substantial change in circumstances since the entry of the previous support decree. *Seal v. Seal*, 726 S.W.2d 934, 935 (Tenn.Ct.App.1986); *Jones v. Jones*, 659 S.W.2d 23, 24 (Tenn.Ct.App.1983). However, once a

change has been shown to exist, the courts should weigh the same factors that were considered in making the original support award. *Threadgill v. Threadgill*, 740 S.W.2d 419, 422-23 (Tenn.Ct.App.1987).

   While Tenn.Code Ann. § 36-5-101(d) authorizes the courts to consider many factors, the real need of the spouse seeking the support is the single most important factor. *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn.Ct.App. 1984). In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support. *Fisher v. Fisher*, 648 S.W.2d 244, 246-47 (Tenn.1983); *Barker v. Barker*, 671 S.W.2d 843, 847 (Tenn.Ct.App. 1984); *Aleshire v. Aleshire*, 642 S.W.2d 729, 733 (Tenn.Ct.App.1981).

*Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn.App.1989) (footnote omitted).

   As to the needs of the Wife, the evidence establishes that she is the almost exclusive care giver for the parties' two minor children. She resides with the children in Rome, Georgia and is employed at a retail store earning approximately $6.00 per hour with an average work week of twenty hours. She has an associates degree in secretarial science dating back to 1971. She suffers from Crohn's Disease which is an inflammatory bowel disease for which there is no cure and which is very debilitating. She was diagnosed with Crohn's Disease in 1972 and following proctocolectomy and ileostomy surgery she is now required to use an ostomy appliance. This device which must be worn at all times must be emptied five to six times a day in a manner that is difficult and embarrassing. In addition, the wife has a non-repairable stomach hernia which is quite painful and while not altogether disabled, she is doing about the best she can to be at least, to some degree, self-supporting. The evidence certainly does not preponderate against the implicit finding of the trial judge that rehabilitation is not feasible. "In this state, there is a recognized preference for rehabilitative alimony. However, when the court finds that rehabilitative alimony is not feasible, we may grant alimony in futuro." *Long v. Long*, 957 S.W.2d 825, 830 (Tenn.App.1997).

   Turning to the husband's ability to pay the amount of permanent alimony awarded in the trial court, we look to the conditions existing at the time

of the divorce decree. These parties enjoyed a fairly high standard of living in the Brentwood area prior to the serious injury of Mr. Sturdivant in a plane crash in February 1993. Thereafter, he suffered from depression and the after effects of his accident. The parties separated, and on August 30, 1995, an agreed pendente lite order was entered whereby the Husband would pay the sum of $1,502 per month as child support and $2,000 per month as alimony pendente lite. At that time the Husband, although disabled, was drawing a salary of $6,500 per month from his work at United Healthcare Corporation. Through no fault of his own, his position with United Healthcare Corporation was eliminated effective July 31, 1996. His income was reduced rather dramatically, at least on a temporary basis, when he accepted employment at Asset Investment Manager. His income for 1997 was $48,311.65, and his anticipated income for calendar 1998 was approximately $64,000. His contract of employment with Asset Investment Manager had a ceiling income of $125,000 per annum and he ventured at the divorce hearing of January 30, 1998 that he "would like to think in a year or two" that he would be earning closer to $125,000 to $150,000. Thus, at the time of the trial court memorandum of decision, February 26, 1998, Mr. Sturdivant was bringing home between $4,200 and $4,400 net per month. By this memorandum from which he appeals, he was paying $2,000 per month as permanent alimony and $1,300 per month in child support which effectively represented more than 75% of his net income.

We hold that based upon the record as it appears before this court the Husband, on February 28, 1998, simply did not have the ability to pay the $2,000 per month in permanent alimony. While we agree with the trial court's determination that permanent alimony is justified in this case rather than rehabilitative alimony, we vacate the award of $2,000 per month in permanent alimony and remand the case to the trial court for further proceedings. On remand the trial court may take into consideration both the conditions existing February 26, 1998 and conditions existing at the time of the hearing on remand. In essence, the Husband was in a transition stage at the time of the February 26, 1998 order and it may well be that his hopes for future income have been realized and the amount of permanent alimony should be set accordingly.

We thus affirm the grant of permanent alimony but vacate the amount thereof for reasons set forth herein. On remand the trial court is free to address anew the ability of the Husband to pay based on circumstances developed since the entry of the February 26, 1998 decree. The application of the Wife for attorney fees on appeal is denied and costs of appeal are assessed against the Husband.


_____
                             WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
WILLIAM C. KOCH, JR., JUDGE