IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2002

## BARRY DUANE BERNSTEIN  v.  DEBRA DARLENE BILL BERNSTEIN

**Appeal from the Circuit Court for Davidson County**
**No.  00D-1073    Muriel Robinson, Judge**

———————

**No. M2001-01631-COA-R3-CV - Filed October 16, 2002**

———————

This appeal involves the dissolution of a nineteen-year marriage.  After the husband filed a complaint in the Circuit Court for Davidson County seeking a divorce on the grounds of irreconcilable differences and inappropriate marital conduct, the wife counterclaimed for divorce on the same grounds.  Following a bench trial, the trial court declared the parties divorced, divided their meager marital estate, and ordered the husband to pay the wife $350 per month as long-term spousal support. The husband asserts on this appeal that he is unable to pay the amount of long-term spousal support ordered by the trial court.  We disagree and have determined that the record supports the trial court's decision regarding spousal support.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Sam E. Wallace, Jr., Nashville, Tennessee, for the appellant, Barry Duane Bernstein.

D. Scott Parsley, Nashville, Tennessee, for the appellee, Debra Darlene Bill Bernstein.

**OPINION**

**I.**

Barry Bernstein and Debra Bernstein were married in Franklin, Kentucy in February 1982. Mr. Bernstein was thirty-six years old, and Ms. Bernstein was twenty-six.  Both of them had been married before, and Ms. Bernstein had two children by her first marriage who lived primarily with her mother.  Mr. Bernstein was employed refinishing motor vehicles.  Ms. Bernstein had a ninth grade education and apparently did not work during the marriage.

In 1993 Mr. Bernstein opened Kustom Kolors of Nashville, Inc., a paint and body shop located in an industrial area of Nashville called Black Bottom.  He was the company's principal employee, although he had another part-time worker who was paid on commission.  Ms. Bernstein claims that she also worked in the business despite a serious back injury sustained in 1991.  The

Bernsteins, along with nine dogs, lived a Spartan life in a small efficiency apartment attached to the body shop.

Animosity, violence, and infidelity eventually eroded the Bernsteins' relationship. They separated in March 2000 when Mr. Bernstein told Ms. Bernstein to "take what she wanted and leave." Ms. Bernstein left, taking with her most of the parties' personal possessions and the restored 1985 Corvette she had been driving. In April 2000, Mr. Bernstein filed a complaint in the Circuit Court for Davidson County seeking a divorce on the grounds of irreconcilable differences and inappropriate marital conduct. Two months later, Ms. Bernstein responded by admitting irreconcilable differences and counterclaiming for divorce on the same grounds alleged by Mr. Bernstein.

During the bench trial on May 29, 2001, the trial court characterized the testimony of both Mr. Bernstein and Ms. Bernstein as "bizarre" and expressly determined that their accounts of the marital relationship, their respective sexual exploits, and the details of Mr. Bernstein's business were not credible.[1] At the conclusion of the hearing, the trial court declared the parties divorced pursuant to Tenn. Code Ann. § 36-4-129(b) (2001). The court awarded Mr. Bernstein the business, his hand tools, and a frame machine but directed him to pay Ms. Bernstein one-half of the net value of the tools ($6,500) as part of the division of property.[2] The trial court also awarded Ms. Bernstein the 1985 Corvette as well as the personal property she had taken from the living quarters when the parties separated. Finally, the trial court directed Mr. Bernstein to pay Ms. Bernstein $350 per month in long-term spousal support until her death or remarriage.

## II.
### THE RESPECTIVE FAULT OF THE PARTIES

Without citation to authority, Mr. Bernstein appears to take issue with the trial court's decision to declare the parties divorced rather than to grant him a divorce on fault grounds. Tenn. Code Ann. § 36-4-129(b) (2001) now permits trial courts to declare parties divorced without assigning fault to either party if "either or both parties are entitled to a divorce." *Fulbright v. Fulbright*, 64 S.W.3d 359, 364 (Tenn. Ct. App. 2001). In this case, both parties asserted that they were entitled to an irreconcilable differences divorce. Based on this assertion, the trial court did not err by declaring them to be divorced without assigning fault.

---

[1] The trial court's overall reaction to the parties' testimony is reflected in the following exchange between the court and Mr. Bernstein during his testimony regarding the operation of Kustom Kolors:

| | |
|---|---|
| THE COURT: | Your testimony almost insults everybody's intelligence in this courtroom. You know, you're making yourself look like a complete idiot. |
| MR. BERNSTEIN: | I am an idiot. |
| THE COURT: | You are not an idiot. You're smart. You are smart as a fox. |
| MR. BERNSTEIN: | I'm an idiot for staying married to her all those years after catching her all the times. |
| THE COURT: | We are not questioning that. The problem is that you give statements that are contrary to your last testimony. You give statements that don't make sense. . . . |

[2] The trial court directed Mr. Bernstein to pay Ms. Bernstein $150 per month for forty-three months to retire this obligation. Mr. Bernstein does not contest the division of the marital estate on this appeal.

# III.
## THE SPOUSAL SUPPORT AWARD

Mr. Bernstein's chief complaint on this appeal is that the trial court erred by ordering him to pay Ms. Bernstein $350 per month in long-term spousal support. He asserts that he is currently earning only $450 per month and, therefore, is unable to pay this much support. This argument overlooks a salient legal principle – a person's obligation to pay spousal support rests on his or her capacity to earn income, not just on his or her actual income.

## A.

There are no hard and fast rules for spousal support decisions. *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998); *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); *Stone v. Stone*, 56 Tenn. App. 607, 615-16, 409 S.W.2d 388, 392-93 (1966). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999). Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994); *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986). Our role is not to fine tune a trial court's spousal support award, *Hartman v. Hartman*, No. E2000-1927-COA-R3-CV, 2001 WL 823188, at *7 (Tenn. Ct. App. July 20, 2001) (No Tenn. R. App. P. 11 application filed), but rather to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001).

Tenn. Code Ann. § 36-5-101(d)(1) (2001) reflects a preference for temporary, rehabilitative spousal support, as opposed to long-term support. *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000); *Goodman v. Goodman*, 8 S.W.3d at 293. Rehabilitative support is intended to enable an economically disadvantaged spouse to acquire additional education or training or to provide that spouse with temporary income during the post-divorce economic adjustment. *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002); *Smith v. Smith*, 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995). On the other hand, the purpose of long-term spousal support is to provide support to a disadvantaged spouse who is unable to achieve some degree of self-sufficiency. *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). The statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long-term or more open-ended support. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991).

Initial decisions regarding the entitlement to spousal support, as well as the amount and duration of spousal support, hinge on the unique facts of each case and require a careful balancing of all relevant factors, including the factors identified in Tenn. Code Ann. § 36-5-101(d)(1) (2001). *Robertson v. Robertson*, 76 S.W.3d at 338; *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). Among these factors, the two considered most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson*, 76 S.W.3d at 342; *Bogan v. Bogan*, 60 S.W.3d at 730; *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001). Of these two factors,

the disadvantaged spouse's need is the threshold consideration. *Aaron v. Aaron*, 909 S.W.2d at 410; *Watters v. Watters*, 22 S.W.3d at 821.

**B.**

Ms. Bernstein has unquestionably demonstrated that she is economically disadvantaged compared to Mr. Bernstein and that she needs long-term spousal support. She is a 47-year-old woman with a ninth grade education. While she obtained training as a certified nurse technician after the parties' separation, she testified that she was able to work only part-time because of the back injury she sustained in 1991 and lung disease. Her physical limitations prevent her from earning more than $700 per month.

Mr. Bernstein's ability to pay long-term spousal support is not measured by his actual income at the time of trial but rather by his earning capacity. Tenn. Code Ann. § 36-5-101(d)(1)(A); *Storey v. Storey*, 835 S.W.2d 593, 596-97 (Tenn. Ct. App. 1992); *see also Bogan v. Bogan*, 60 S.W.3d at 735 (Holder, J., dissenting). Despite his boast that he is an "expert" in automobile refinishing, he testified that he was currently earning only $450 per month at his paint and body shop. The trial court, however, was not required to base its long-term spousal support award on this income figure for two reasons. First, Mr. Bernstein's testimony regarding his income was so evasive and unbelievable that the trial court had good cause to disregard it. Second, Mr. Bernstein stated that he was planning to close his business and go to work for somebody else and that he could earn $500 to $600 per week if he did so.

In light of Mr. Bernstein's self-confessed ability to earn more than $31,000 per year refinishing automobiles, we have no basis for concluding that the trial court's decision to calculate his spousal support obligation on an annual income of $31,000 rather than $5,400 is clearly unreasonable. Likewise, after considering all the other relevant factors in Tenn. Code Ann. § 36-5-101(d)(1), we have determined that the trial court did not err by ordering Mr. Bernstein to pay Ms. Bernstein $350 per month in long-term spousal support.

**IV.**

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Barry Duane Bernstein and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

-4-