IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2008 Session

## LISA MARIE WALLS ALTMAN v. BENJAMIN ALTMAN

Direct Appeal from the Chancery Court for Washington County
No. 36562    G. Richard Johnson, Chancellor

No. E2008-00081-COA-R3-CV  - FILED SEPTEMBER 29, 2008

The Trial Judge awarded the wife a divorce in this case and ordered the husband to pay periodic alimony in the amount of $5,000.00 a month.  The husband has appealed and we affirm the Judgment of the Trial Court, as modified.

Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed, as Modified.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

L. Caesar Stair, III., and Margo J. Maxwell,, Knoxville, Tennessee, for appellant.

Robert D. Arnold, Johnson City, Tennessee, for appellee.

**OPINION**

In this divorce action, the sole issue on appeal is whether the Trial Court erred in awarding the wife periodic alimony in the amount of $5,000.00 a month.

At the conclusion of the evidentiary hearing, the Trial Court entered a Decree granting the wife a divorce on the statutory grounds of inappropriate marital conduct as defined by Tenn. Code Ann. § 36-4-101(11).

The husband was ordered to pay the wife alimony *in futuro* of $5,000.00 a month, and in justification of this award of alimony, the Trial Court explained that the earning capacity of the

husband of $26,500.00 a month far surpassed the earning capacity the Court assigned to the wife of $1,500.00 a month. The Court further noted that the wife had devoted herself to being a homemaker and to taking care of the children. The Court stated the wife already had her B.S. degree and that she "cannot have further education or training to improve her earning capacity, because she is a mama and for fourteen years, she has taken care of those two children and she is a homemaker, and that's her job and that's what takes up most of her time . . . . It would be undesirable for the Plaintiff to seek employment outside the home, because she is the custodian of the children, and they are very active and . . . They need her there".

The wife was designated as the primary residential parent and the husband was ordered to pay $2,549.00 per month for child support and $850.00 per month to cover the costs of the son's private school tuition, music lessons and summer camp fees.

The sole issue on appeal as stated by the husband is: "Did the Trial Court err in awarding permanent alimony of $5,000.00 per month to wife, where wife did not demonstrate any need for long term spousal support and is college educated, capable and willing to obtain full time employment?"

The husband contends the Trial Court erred when it awarded permanent rather than rehabilitative alimony based on a finding the wife could not be rehabilitated and that her "job" was taking care of the children. The Trial Court made findings of fact that it would be undesirable for the wife to work outside the home as the children were very active with school, sports and extracurricular activities and needed their mother with them. But the wife testified that she intended to work and to support herself and her children and that she planned on getting a job that would be "conducive to my kids' schedule as well as to our lifestyle." She discussed the possibility of substitute teaching, which would allow her to be available for the children after school, on weekends and during vacations.

A trial court has broad discretion regarding the amount and type of alimony awarded. A determination of alimony is factual and requires a balancing of factors including those listed in § 36-5-121(i)(2005). *Watters v. Watters,* 959 S.W.2d 585, 593 (Tenn. Ct App. 1997).[1] A trial court's decision on alimony will not be disturbed unless the trial court abused its discretion. *Robertson v. Robertson,* 76 S.W.3d 337, 342 (Tenn. 2002)(citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)); *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999). This Court in *Brown v. Brown,* 913 S.W.2d 163, 169 (Tenn.Ct. App. 1994) discussed the trial court's broad discretion concerning the amount and duration of alimony, and observed that alimony is factually driven and requires a balancing of the factors contained in Tenn. Code Ann. § 36-5-101(d)(1), [now § 36-5-121(i)(2005)]. *Id.* (citing *Williams v. Williams,* 146 Tenn. 38, 46, 236 S.W. 938, 940 (Tenn. 1922); *Stone v. Stone,* 56 Tenn. Ct. App. 607, 615-16, 409 S.W.2d 388, 392-93 (1966). The *Brown* Court noted that this Court is generally not inclined to alter a trial court's

_____

[1] *Watters references* Tenn. Code Ann. § 36-5-101, which was amended by deleting the section in its entirety and substituting § 36-5-121 by 2005 Tenn. Laws Pub. Ch. 287 (S. B. 2091).

decision on alimony unless it is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes. *Id.* (citing *Gilliam v. Gilliam,* 776 S.W.2d 81, 86 (Tenn. Ct. App.1988); *Ingram v. Ingram,* 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

Tennessee Code Annotated § 36-5-121 (2005) establishes several different classes of alimony, and reflects a statutory preference for rehabilitative alimony and transitional alimony over periodic alimony. *See also Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn. 2004); *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003); *Crabtree v. Crabtree,* 16 S.W.3d 356, 358 (Tenn. 2000). Tenn. Code Ann. § 36-5-121(d)(2) states that "[i] t is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible". The purpose of such an award is to encourage and aid the economically disadvantaged spouse in becoming more self-sufficient. *Burlew v. Burlew,* 40 S.W.3d 465, 471(Tenn. 2001). However, this statutory preference does not displace other forms of spousal support, such as periodic alimony, when the circumstances warrant long-term or more open-ended support. Tenn. Code Ann. § 36-5-121(d)(3). *See also Aaron v. Aaron,* 909 S.W.2d 408, 410 (Tenn.1995); *Anderton v. Anderton,* 988 S.W.2d 675, 682 (Tenn. Ct. App.1998). Tenn. Code Ann. § 36-5-121(d)(3) provides that when the disadvantaged spouse is not capable of economic rehabilitation sufficient to support a reasonable standard of living under the circumstances, the court may award long-term spousal support.

There are no hard and fast rules for making spousal support decisions and such determinations require a "careful balancing' of the relevant factors. *Miller v. Miller,* No. M2002-02731-COA-R3-CV, 2003 WL 22938950 at*3 (Tenn. Ct. App. Dec. 10, 2003)(citing *Anderton.* Trial courts are to consider all the factors outlined in Tenn. Code Ann. § 36-5-121(i) in determining whether a spouse should receive support, the amount of support and what type of alimony is proper. *Robertson v. Robertson*, 76 S.W. 3d 337, 338 (Tenn. 2002). Under Tenn. Code Ann. § 36-5-121(i) the Supreme Court has held that "[t]he two most relevant factors in determining the amount of alimony awarded are the economically disadvantaged spouse's need and the obligor spouse's ability to pay." *Broadbent v. Broadbent,* 211 S.W.3d 216, 222 (Tenn.2006); *see also Loyd v. Loyd,* 860 S.W.2d 409 (Tenn. Ct. App.1993); *Lindsey v. Lindsey*, 976 S.W.2d 175 (Tenn. Ct. App. 1997). The concept of relative economic disadvantage incorporates the principles of need and ability to pay. Of these two factors the disadvantaged spouse's need is the threshold issue and the next consideration is the ability of the other spouse to furnish support. *Miller v. Miller*.

Tennessee Code Annotated § 36-5-121 requires the courts to take into consideration the different roles spouses may have in a marriage when considering an award of alimony. The statute provides that "[t]he contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, ... the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties". Tenn. Code Ann. § 36-5-121(c)(2). Pursuant to the statute, the courts must consider the parties' standards of living during the marriage and post-divorce where one spouse, as the homemaker or parent, has

concentrated his or her efforts on the family, while the other spouse has followed a career. *Jackson v. Jackson,* No. W2006-00182-COA-R3-CV, 2007 WL 529928 at *8 (Tenn. Ct. App., Feb. 22, 2007)(citing *Goodman v. Goodman,* No. M2004-02781-COA-R3-CV, 2006 WL 47359 at *4, 5 n. 2 (Tenn. Ct. App. Jan.9, 2006); *see also Morrow v. Morrow,* No. M2003-02448-COA-R3-CV, 2005 WL 1656825 at *8 (Tenn. Ct. App. July 14, 2005).

The Trial Court, in its ruling from the bench, meticulously reviewed the applicable factors listed in Tenn. Code Ann. § 36-5-121(i) and the applied facts presented at trial to the factors. Of significance was the Trial Court's findings that the husband's monthly earning capacity was greater than the wife's predicted monthly earning capacity by almost 18 fold ($26,500.00 vs. $1,500.00), that it was undesirable for the wife to work outside of the home as long as the children needed her, that the Altmans' standard of living during the marriage was high and that the fault for the divorce lay with the husband. The evidence does not preponderate against the Trial Court's findings. Tenn. R. App. P. 13(d). Both the husband and wife testified regarding the children's sports and other activities and the traveling associated with the competitive soccer tournaments they are involved with. The husband also testified that his work schedule is not always conducive to his attending out of town games. Both parents were supportive of the children's active lives and wanted the children to be able to continue to pursue their interests.

The wife's ability to establish a career will be curtailed until the children are grown and no longer need their mother to accompany them to various activities and events. The evidence established that the wife is the economically disadvantaged spouse and that her standard of living after the divorce should be "reasonably comparable to the standard of living enjoyed during the marriage" or to the post-divorce standard of living expected to be available to the husband if alimony was awarded.

The husband argues the Trial Court did not properly evaluate the wife's need for alimony. The wife submitted a Rule 9 Statement which listed her and the children's monthly expenses as $6,270.00. She did not list the amount she received in child support or the $750.00 a month she received in wages from her part time job. According to the husband's calculations, the wife had no need for additional income in the way of alimony as she received child support payments from the husband and she could invest and receive income from the approximately $400,000.00 she received in the property distribution. However, the husband fails to factor in to his argument the evidence presented at trial regarding the lifestyle enjoyed by the Altman family during the marriage. The wife shared with the husband in a lifestyle that included an estate worth 1.2 million dollars, private schools and special lessons for the children, several horses, travel, cruises and purchases of fine art and furniture and an average monthly income of more than $26,500.00. The wife is clearly the economically disadvantaged spouse and her standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse. The alimony award of $5,000.00 a month, which is less than one fifth of Husband's average monthly income, was not an abuse of discretion by the Trial Court.

However, the Trial Court's ruling was based on the circumstances as existed at the time of the divorce and the Trial Court emphasized that the mother's role as custodian of the children was a significant factor in his award of alimony to the wife. Lucas, the youngest child, was ten years old at the time of the divorce. In eight years he will be eighteen and presumably move on to pursue a university education and career of his own. At that time, the wife will be in a position to start to support herself in a more substantial way, and not continue the role as existed at the time of the divorce.

We do not disagree with the Trial Court's finding that the wife's role in caring for the children during the marriage should continue after the divorce. But she will presumably be relieved of this role when the youngest child, Lucas, completes the school year following his eighteenth birthday. Since the award of alimony was based in large part on the wife's role in caring for the children, vis a vis joining the workforce, we conclude that alimony will no longer be needed to support that role when the youngest child turns eighteen. We modify the Trial Court's Judgment to terminate the award of alimony upon the youngest child attaining his majority. In this connection *see, Blankenship v. Blankenship*, No. M2000-01483-COA-R3-CV, 2001 WL 401585 (Tenn. Ct. App. Apr. 23, 2001).

In sum, we hold the Trial Court did not abuse its discretion in awarding alimony in the amount of $5,000.00 and this amount is in keeping with the lifestyle the Altman family enjoyed before the divorce, and for her continued role as a mother. However, the evidence does not support continuing the award of alimony after the youngest child attains the age of eighteen, and we modify the Judgment to terminate the alimony upon that event.

The Trial Court's Judgment is affirmed, as modified, and the cause remanded. In our discretion, the costs of this appeal are taxed to the husband, Dr. Benjamin Altman.

_____
HERSCHEL PICKENS FRANKS, P.J.

-5-